**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | **Bankruptcy No. 14-11277-JAD** |
| **TRUSTEES OF CONNEAUT LAKE** | ) | |
| **PARK, INC.,** | ) | **Chapter 11** |
| | ) | |
| Debtor-in-Possession. | ) | **Adversary No. 15-1010-JAD** |
| _____ | X | |
| | ) | **Related to Dkt. ## 30 and 36** |
| **PARK RESTORATION, LLC,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| - vs - | ) | |
| | ) | |
| **SUMMIT TOWNSHIP, a Municipal** | ) | |
| **Corporation; THE TRUSTEES** | ) | |
| **OF CONNEAUT LAKE PARK,** | ) | |
| **a Charitable Trust; CRAWFORD** | ) | |
| **COUNTY, a Political Subdivision;** | ) | |
| **the TAX CLAIM BUREAU OF** | ) | |
| **CRAWFORD COUNTY; and the** | ) | |
| **CONNEAUT SCHOOL DISTRICT,** | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | X | |

## MEMORANDUM OPINION

This adversary proceeding is a civil action that was removed to this Court from the Court of Common Pleas of Crawford County, Pennsylvania.

This adversary proceeding seeks a declaratory judgment regarding the relative rights of the Trustees of Conneaut Lake Park, Inc. (the "Debtor"), Park Restoration, LLC (the "Plaintiff") and certain tax creditors of the Debtor (specifically Summit Township, Crawford County, the Tax Claim Bureau of Crawford County and Conneaut School District (collectively, the "Taxing Authorities")) as to fire insurance proceeds in the original amount of $611,000.

This Court has subject-matter jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b), and this action is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A),(E), (K), (M) and (O).

Procedurally, the parties seek a final determination of this matter by way of dueling Motions for Summary Judgment. The Court describes the motion practice as "dueling" because the Taxing Authorities filed their own Motion for Summary Judgment (which was met with opposition by the Plaintiff). In turn, the Plaintiff filed its Motion for Summary Judgment which received opposition from both the Debtor and the Taxing Authorities.

Because the Plaintiff's claim to the insurance proceeds rests, in part, upon a Constitutional challenge to a state statute, the matter was certified to the Attorney General of the Commonwealth of Pennsylvania pursuant to 28 U.S.C. § 2403. The Commonwealth, through its Attorney General, subsequently filed various response briefs in opposition to the Plaintiff's Motion for Summary Judgment.

After briefing was completed and the Court having conducted numerous hearings, the dueling motions are now ripe for determination.

For the reasons that are set forth below, the Court shall enter an order that grants partial summary judgment in favor of the Plaintiff and grants partial summary judgment in favor of the Taxing Authorities. Towards that end, the Court finds that no genuine issue of material fact exists and that a judgment as a matter of law is appropriate insofar as: (a) the Taxing Authorities are entitled to be paid $478,260.75 of the Insurance Proceeds (as defined in

2

footnote 1 below); and (b) the Plaintiff is entitled to the remaining Insurance

Proceeds that are held in the registry maintained by the Clerk of the United

States Bankruptcy Court for the Western District of Pennsylvania.[1]

## I.

A fair reading of the pleadings and briefs filed by all of the parties in this

case is that the parties concede that (a) the material facts are not in dispute,

and (b) this case is ripe for determination according to the standards by which

federal courts enter summary judgment.   For the sake of completeness,

however, this Court has undertaken an independent review of the record and

agrees that this case is ripe for summary judgment.

## II.

The standard upon which federal courts determine motions for summary

judgment is found at Fed.R.Civ.P. 56 (which is incorporated into bankruptcy

proceedings by operation of Fed.R.Bankr.P. 7056).   This rule states, in

pertinent part, as follows:  "the court shall grant summary judgment if the

movant shows that there is no genuine dispute as to any material fact and the

movant is entitled to judgment as a matter of law." See Fed.R.Civ.P. 56(a).

When considering a motion for summary judgment, the court should "(i)

resolve conflicting evidence in favor of the nonmovant, (ii) not engage in

---

[1]    By Order dated April 21, 2015, the total amount of $613,879.95 was transferred from
the Court of Common Pleas of Crawford County into the registry maintained by the Clerk of the
United States Bankruptcy Court for the Western District of Pennsylvania.   The amount of
insurance proceeds originally was $611,000.  Presumably some sort of interest accrued on the
funds in the state system.   Parties, however, are not entitled to any interest on funds
maintained in the registry of the Clerk of the United States Bankruptcy Court. See Leider v.
United States, 301 F.3d 1290 (Fed. Cir. 2002). As such, the term "Insurance Proceeds" as used
in this Memorandum Opinion and any accompanying Order shall refer to the amount of funds
deposited into the Clerk's registry, which is $613,879.95.

credibility determinations, and (iii) draw all reasonable inferences in favor of the nonmovant." <u>Fuentes v. Perskie</u>, 32 F.3d 759, 762 n. 1 (3d Cir. 1994).

The moving party also has the initial burden of pointing out evidence which the moving party believes entitles it to judgment as a matter of law, after which the nonmoving party must "respond by pointing to sufficient cognizable evidence to create material issues of fact concerning every element as to which the nonmoving party will bear the burden of proof at trial." <u>Id</u>. (citing <u>Davis v. Portline Transportes Maritime Internacional</u>, 16 F.3d 532, 536 & n. 3 (3d Cir. 1994)).

To prevail on a motion for summary judgment, "the non-moving party must present more than a mere scintilla of evidence; there must be evidence on which the jury could reasonably find for the [non-movant]." <u>Jakimas v. Hoffman-La-Roche, Inc.</u>, 485 F.3d 770, 777 (3d Cir. 2007)(quotation marks omitted, and quoting <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 252, 106 S.Ct. 2505 (1986)).

With these standards in mind, the Court analyzes the dueling motions for summary judgment and determines that relief is appropriate given the state of the law and the uncontested facts presented to the Court.

## III.

The facts of this case are not in genuine dispute; nor are the facts overly complicated.

In a nutshell the Plaintiff managed and operated what is commonly known as the "Beach Club," which was situated on the Debtor's property at or

4

near the shore of Conneaut Lake. (See Response to Motion for Summary
Judgment at ¶10 filed at Dkt. #35).[2]

The Beach Club Management Agreement dated November 24, 2008 has
been described by some of the parties as being akin to a lease of the Beach
Club, but recently the parties have waffled as to this characterization.
(Compare id. (denying lease nature of transaction) with the Complaint for
Declaratory Judgment at ¶8 and Amended Complaint for Declaratory
Judgment at ¶10 and filed at Dkt. #1 (acknowledging lease nature of
transaction); see also Debtor's Answer and New Matter at ¶¶ 8 and 9, and
Crawford County Tax Claim Bureau Answer and New Matter at ¶10 (suggesting
that the Plaintiff leased the Beach Club from the Debtor).

What is not in dispute is that at all times relevant hereto (a) the Debtor
was the fee owner of both the subject real estate and Beach Club on which it
sits, and (b) the Plaintiff had physical control (i.e., possession) of the Beach
Club for the term described in the Beach Club Management Agreement.[3]
(Response to Motion for Summary Judgment filed at Dkt. #35; see also id. at
Ex. A).

In connection with its control and use of the Beach Club, the Plaintiff
obtained a policy of insurance from Erie Insurance Exchange which included
"Property Protection" covering "Buildings" in case of fire damage in the amount

---

[2]    Unless expressly stating otherwise, all references to "Dkt. #__" in this Memorandum
Opinion shall refer to the document number as appearing on the Clerk's docket report for
Adversary Proceeding No. 15-1010-JAD.

[3]    The Beach Club Management Agreement had a term of occupancy of twenty (20) years.

of $611,000. (See Motion for Summary Judgment filed at Dkt. #30 at ¶12). Although the Plaintiff had the option of purchasing coverage for "Income Protection," it declined to do so. (See Renewal Certificate attached as Ex. C (docketed as Ex. B) to the Reply Brief in Support of Plaintiff's Motion for Summary Judgment filed at Dkt. #53)(reflecting no "Income Protection").

On August 1, 2013, the Beach Club was completely destroyed by fire. (See Motion for Summary Judgment filed at Dkt. #30 at ¶13). As a result of the destruction, the Plaintiff submitted a claim for the proceeds of the underlying insurance policy with Erie Insurance Exchange. (Id. at ¶14). At that juncture, the Taxing Authorities were owed outstanding taxes on the real estate in the amount of $478,260.75. (Id. at ¶¶ 18-23).

Erie Insurance Exchange, in turn, indicated that it was going to comply with 40 P.S. § 638 (the "State Statute"). It did so because the Tax Collector of Summit Township presented Erie Insurance Exchange with a certificate specifying that the Beach Club property remained subject to the outstanding tax obligations of the Taxing Authorities in the amount of $478,260.75. (Id. at ¶15).

The State Statute provides that an insurance company presented with "a claim of a named insured for fire damage to a structure located within a municipality" may not pay such a claim in excess of $7,500 without first receiving a "certificate" explaining whether "delinquent taxes, assessments, penalties or user charges against the [insured] property" are owed to the municipality. See 40 P.S. § 638(a), (b)(1)(i)-(ii). After receiving a "certificate and

6

bill" indicating that the covered property remains subject to a municipal tax liability, the State Statute further provides that an insurance company must "return the bill to the [municipal] treasurer and transfer to the treasurer an amount from the insurance proceeds necessary to pay the taxes, assessments, penalties, charges and costs shown on the bill." Id. at §638(b)(2)(ii).[4]

Notwithstanding the express terms of the State Statute, the Plaintiff disputed (and continues to dispute) payment of any of the Insurance Proceeds to the Taxing Authorities, and commenced an action against them, the Debtor and Erie Insurance Exchange on September 10, 2013 in the Court of Common Pleas of Crawford County, Pennsylvania.

In the action, the Plaintiff sought a declaration that the delinquent taxes owed by the Debtor did not entitle the relevant Taxing Authorities to any of the Insurance Proceeds otherwise payable to the Plaintiff under the applicable policy. Erie Insurance Exchange then filed an interpleader action in the Court of Common Pleas, and the funds were deposited with the state trial court.

After the commencement of the Debtor's bankruptcy case on December 4, 2014, the declaratory judgment action was removed to this Court by way of a Notice of Removal that was filed on February 3, 2015. (Dkt. #1). Erie Insurance Exchange was then stricken from the caption of this case because it had previously interpleaded the funds with the Court of Common Pleas and

---

[4]    The State Statute applies "only to municipalities that have adopted an ordinance authorizing the procedure set forth" therein, and "only to fire losses [occurring] after the effective date of the ordinance." See 40 P.S. §638(h). The Board of Supervisors of Summit Township, Pennsylvania adopted such an ordinance on November 1, 1997. (See Response to Motion for Summary Judgment at ¶19 filed at Dkt. #35).

was previously dismissed as a party to the lawsuit by way of an order of the state court dated December 9, 2013 (which was well prior to the commencement of the Debtor's bankruptcy case and the filing of the Notice of Removal). (Dkt. #15).

## IV.

The parties to this lawsuit do not dispute that if the State Statute is to be enforced as written, the Taxing Authorities should be paid $478,260.75. This, however, is the limit of where the parties agree.

The Plaintiff disputes the application of the State Statute as written. The Plaintiff contends that the State Statute applies solely to those situations where the fee owner of the property is the insured and where the tax liabilities at issue are the financial responsibility of the owner as well. Stated in other words, the Plaintiff contends that the applicability of the State Statute does not extend to situations where the insured neither owns the property nor where the tax obligation in the first instance is the primary financial responsibility of some party other than the named insured. The Plaintiff contends that to construe the State Statute otherwise would result in a "gratuitous confiscation" of the Insurance Proceeds in violation of the Takings Clause found in both the Fifth Amendment of the United States Constitution and in Article I, Section 10 of the Pennsylvania Constitution.

The Debtor and the Taxing Authorities contend that the State Statute applies to the undisputed facts of this case (i.e., that the Insurance Proceeds are first payable to the Taxing Authorities) and that the application of the State

Statute according to its plain and ordinary meaning does not run afoul of the Takings Clause(s) found in the U.S. and Pennsylvania Constitutions. The Commonwealth of Pennsylvania joins in this contention as well.

In addition, the Debtor further claims that the Plaintiff is entitled to none of the Insurance Proceeds after payment to the Taxing Authorities (despite the fact that the Plaintiff bought and paid for the insurance). In this regard, the Debtor contends that the beneficiary of the policy is the Debtor (and not the Plaintiff) because the Plaintiff elected to insure the interests of the Debtor as "Owner" of the Beach Club in question. Thus, the Debtor requests payment of any remaining Insurance Proceeds above and beyond the $478,260.75 due the Taxing Authorities.

Each of the arguments of the parties are addressed below and in the following order: (a) Whether the Debtor should be paid any proceeds as an insured under the policy in question; (b) Whether the State Statute in question provides for the payment of the Debtor's tax obligations to the Taxing Authorities; and (c) Whether the application of the State Statute to the facts and circumstances of this case is contrary to the Takings Clauses found in the U.S. and Pennsylvania Constitutions.

**(a).**
**Absent Application of the State**
**Statute, the Insurance Proceeds Would**
**be Payable to Park Restoration, LLC as it**
**is the Insured Under the Policy**

If the plain language of the insurance policy provides that the Insurance Proceeds are payable to the Debtor, the outcome of this declaratory judgment

action is simple—that is the Insurance Proceeds would be the Debtor's subject to the claim of the Taxing Authorities. If this were the outcome, the parties also agree that no Constitutional question would be posed by this contested matter.

To short circuit this case, this is exactly what the Debtor has asserted. In summary, the Debtor argues that the Plaintiff elected to insure the Debtor's interest as the fee owner of the Beach Club. The Debtor further argues that because the Plaintiff elected to insure the Debtor's ownership interest, the Insurance Proceeds are payable to or for the benefit of the Debtor. In support of this contention, the Debtor cites not the insurance policy itself. Rather, the Debtor cites the Renewal Certificate issued by Erie Insurance Exchange. (See Renewal Certificate attached as Ex. C (docketed as Ex. B) to the Reply Brief in Support of Plaintiff's Motion for Summary Judgment filed at Dkt. #53). The Debtor's argument in this regard is not persuasive.

To avoid confusion, the Court first observes that it is possible for the Plaintiff to obtain an insurable interest even though it was not the fee owner of the Beach Club. The Court reaches this conclusion because Pennsylvania law provides that "a person need not have any property interest in the subject matter insured and that a person [has] an insurable interest in property 'if he holds such relation to the property that its destruction by the peril insured against involves pecuniary loss to him.'" A.K. Nahas Shopping Ctr., Inc. v. Reitmeyer (In re Nahas), 161 B.R. 927, 931 (Bankr. W.D. Pa. 1993)(citing Commonwealth v. Rodebaugh, 519 A.2d 555, 563 (Pa. Commw. Ct. 1986)).

Pennsylvania courts have also held that it "is an elementary principal of insurance law that an insurable interest exists in any party who would be exposed to financial loss by the destruction of certain property." <u>Kellner v. Aetna Casualty and Surety Co.</u>, 605 F. Supp. 331, 333 (M.D. Pa. 1984).

Clearly under these standards, the Plaintiff has an insurable interest. Support for this conclusion can be found in both the Beach Club Management Agreement and the applicable insurance policy.

As to the Beach Club Management Agreement, the Plaintiff had a significant interest in the Beach Club.    Specifically, the Beach Club Management Agreement granted to the Plaintiff operational control (which is a euphemism for possession)[5] of the Beach Club premises and business for a twenty year period, commencing on or about November 24, 2008.  Recognizing the financial importance of this asset, and even though the Plaintiff's interest does not rise to the level of fee ownership, the Plaintiff sought to protect its investment and its rights under the Beach Club Management Agreement by purchasing and paying for a casualty insurance policy issued by Erie Insurance Exchange.

That policy- called an Ultraflex Package Policy- states that "[i]n return for [Plaintiff's] timely premium payment, [Plaintiff's] compliance with all of the provisions of this policy, and [Plaintiff's] signing of a 'Subscriber's Agreement' … we [i.e., Erie Insurance Exchange] agree to provide the coverages **you** have

---

[5]    The Debtor even acknowledges such in its brief where it admits that "Plaintiff was in possession, using, and occupying the Beach Club at the time of the August 1, 2013 fire." (See Debtor's Brief in Opposition to Motion for Summary Judgment at p. 7 and filed at Dkt. #42).

purchased." (See Exhibit A, p. 2, attached to the Declaration of Francis Murrman, Esq. at Dkt. #52)(emphasis added).

The policy further reflects that payment of proceeds under it will be made to "you," which is defined in the policy to be the named insured under the policy. (Id. at pp. 13, 37, 74, and 100). Of course, the named insured is the Plaintiff.

It is true that the policy also provides that "We [i.e., Erie Insurance Exchange] will pay you unless some other person is named in the policy or is legally entitled to receive payment." (Id. at p. 37). The Debtor, however, has not pointed to any provision in the policy where it is a named insured; nor has the Debtor cited any compelling legal authority upon which bases its claim of entitlement to the Insurance Proceeds. Rather, the Debtor rests its case upon the Renewal Certificate issued by Erie Insurance Exchange as opposed to the policy document itself.[6]

The Debtor's reliance on the Renewal Certificate can be summarized by the following syllogism: One, the insured property was the "Building;" two, the insured interest covered by the policy is that of "Owner;" three, because the Plaintiff was not the "Owner" of the "Building," the Plaintiff is not entitled to any of the Insurance Proceeds; and four, because the Debtor is the "Owner" of the "Building," the Debtor must be recognized as the true insured under the policy even though the policy was bought and paid for by the Plaintiff.

---

[6]    A copy of the Renewal Certificate is attached to this Memorandum Opinion at Appendix A.

At the surface, the syllogism propounded by the Debtor does seem logical.    However, once one digs under the surface and examines the circumstances closely, the syllogism fails.  In fact, examination of the Renewal Certificate itself results in the Court finding flaws in the Debtor's argument.

The Renewal Certificate that is being relied upon by the Debtor to make a claim to the insurance proceeds is a renewal certificate issued by Erie for the policy period in which the fire occurred.  The Renewal Certificate covering a policy period of May 21, 2013 to May 21, 2014 states unequivocally that the Plaintiff, Park Restoration LLC, is the sole named insured.  (See Doc. # 42, Exhibit 1).

The Renewal Certificate also states that it is "subject to all applicable terms of the policy and attached forms and endorsements," and that "[t]he insurance applies to those premises described as per the attached supplement declarations."  (Id. at p. 2).  The "attached supplemental declarations" further state that the location of the premises as "12324 Lake Street," that the occupancy/operations is the "Beach Club Restaurant," and that the "Owner" under the Renewal Certificate is the "Interest of Named Insured in Such Premises."  (Id. at p. 3). Obviously, the "Named Insured" is the Plaintiff, as reflected on the very first page of the Renewal Certificate. (Id. at p. 2).

Given these plain terms of the Renewal Certificate, it is quite clear that Erie Insurance Exchange and the Plaintiff intended that the Plaintiff be the named insured under the applicable policy renewal and not the Debtor.

Notwithstanding this fact, the Debtor is now attempting to have itself treated as an insured by contending that the use of the word "Owner" on the Renewal Certificate catapults it into insured status.  However, the use of the word "Owner" in the Renewal Certificate does not change the fact that the Plaintiff is the sole named insured, and does not confer an interest to the Debtor under the policy in question.

The use of the word "Owner" appears to connote that the Plaintiff has some sort of property interest in the premises—which is true.  The Plaintiff had a possessory interest for a term of twenty (20) years under the Beach Club Management agreement which is akin to either a leasehold interest in the property or a license with respect to the same. The Plaintiff even admits in its Complaint for Declaratory Relief that "the 'Beach Club Management Agreement' is essentially a lease of the premises." (See Complaint for Declaratory Relief at ¶8 and Amended Complaint for Declaratory Relief at ¶10 and filed at Dkt. #1). Additionally, the answers and new matter filed by the Debtor and certain of the Taxing Authorities also appear to concede that the Plaintiff held some sort of leasehold interest in the Beach Club premises. (See e.g., Debtor's Answer and New Matter at ¶¶ 8 and 9, and Crawford County Tax Claim Bureau Answer and New Matter at ¶10).

The fact of the matter is that the Renewal Certificate expressly states that the renewal was subject to all applicable terms of the policy and attached forms and endorsements.  Couch on Insurance states:

> In the absence of a clear provision in the policy defining the nature of the renewal, some courts regard the renewed or renewal contract

as though it were merely a continuation or extension of the original contract.  By this view, the renewal of a policy continues it in force without interruption, and the renewal certificate is simply a contract to continue in force a preexisting policy of insurance.
Where the policy of insurance is in a sense 'automatically' renewed when the insured pays an additional premium, the parties are deemed bound by the original contract of insurance.

2 <u>Couch on Ins</u>. (3d Ed.) §29:35 (citations omitted).

In the instant case, the insurance policy references a renewal certificate as an indication that the policy is being renewed for another policy period. Because the Renewal Certificate was simply a contract to continue in force the preexisting insurance policy, the Court finds that the inclusion of the word "Owner" in the Renewal Certificate did not change the fact that the Plaintiff was the sole named insured.  This conclusion is appropriate because, as set forth above, the policy expressly provides coverage for the benefit of "you," provides that payment of proceeds will be made to "you," and it is not in dispute that the term "you" in the policy itself means that payments shall be made to the Plaintiff.

Case law provides additional support for this conclusion.  In <u>Summit Bank & Trust v. Am. Modern Home Ins. Co.</u>, 12-cv-02395, 2013 WL 1294273 (D. Colo. Mar. 27, 2013), the defendant insurance company moved to dismiss the bad faith complaint on the grounds that plaintiff had no insurable interest since the plaintiff was not a named insured on the underlying policy.

The plaintiff in <u>Summit Bank</u> asserted entitlement to recovery as an additional insured because a certificate of insurance had listed the insured as the "Insured/Borrower."  The court, noting that the certificate of insurance

stated that it was being issued "pursuant to the master policy issued to [the] mortgagee," found that such language showed it was not intended to change the underlying policy, and explicitly stated that "[w]hen a certificate expressly states it was issued subject to a policy, the language of the underlying policy controls." Id. at *2 (citing Taylor v. Kinsella, 742 F.2d 709, 711 (2d Cir. 1984)). Thus, "simply labeling a hitherto unnamed party as an 'Insured/Borrower' is not a legally sufficient expression of intent to modify the underlying policy." Id. See also Quincy Mut. Fire Ins. Co. v. Imperium Ins. Co., C.A. No. 14-612, 2015 WL 1759146, *6-7 (E.D. Pa. Apr. 17, 2015), appeal docketed, No. 15-2104 (3d Cir. May 5, 2015) (relying in part upon Summit and Taylor, the court found that the insurance certificate did not bind the insurer where the certificate contained the standard language regarding issuance for information purposes only and listed a party as an additional insured that was not on the underlying policy).

Further, in Mountain Fuel Supply Co. v. Reliance Ins. Co., 933 F.2d 882 (10th Cir. 1991), the Tenth Circuit noted that "[a]bsent a plain manifestation of intent to incorporate a certificate or endorsement into an insurance policy, the policy will remain in force as originally written." 933 F.2d at 889 (citing Taylor, 742 F.2d at 711-12)(observing the "majority view" that where a certificate of insurance states that it does not intend to alter policy coverage it will not cause a change in the policy).

This Court's conclusion that the Debtor is not an insured under the policy is further corroborated by the Petition for Interpleader filed in the Court

16

of Common Pleas by Erie Insurance Exchange (the "Petition for Interpleader").

That Petition for Interpleader references only the Plaintiff as the insured party

under the Insurance Policy, and does not refer to the Debtor as an additional

named insured.  (Doc. # 1, Exhibit 11, ¶3).  In fact, the Petition for Interpleader

contains no mention of the Debtor as having any rights of the insured; nor

does the Petition refer to any other particular party as the "Owner."  (See id.).

Based on the intent of the Plaintiff to be the only named insured, the

language of the policy itself, and the language of the Petition for Interpleader,

the Court finds that the Debtor is not an insured under the insurance policy

and has not otherwise set forth a successful claim to the Insurance Proceeds.

Thus, absent the application of 40 P.S. § 638, the extent of the Plaintiff's

interest in the insurance proceeds extends to the full amount of the proceeds.

Of course, the application of 40 P.S. § 638 is subject to dispute.  If the

State Statute applies, Summit Township would be entitled to payment as a

statutory and contractual matter because the policy in question states that "We

[i.e., Erie Insurance Exchange] will pay you unless some other person is named

in the policy or is legally entitled to receive payment." (See Exhibit A, p. 37,

attached to the Declaration of Francis Murrman, Esq. at Dkt. #52).

### (b).
### The Taxing Authorities Are Entitled
### Under the State Statute to be Paid
### From the Insurance Proceeds

The Plaintiff argues that 40 P.S. § 638 should be interpreted to apply

only where the "named insured" is also the actual fee owner of the property

insured against fire damage.  The Plaintiff also seems to argue that the State

Statute does not apply when the named insured is not the delinquent taxpayer in the first instance.  The plain language of the statute, however, is at odds with the Plaintiff's construction of 40 P.S. § 638.

The Court reaches this conclusion because the statute unequivocally states:

> (a) No insurance company, association or exchange doing business in this Commonwealth shall pay a claim of a **named insured** for fire damage to a structure located within a municipality where the amount recoverable for the fire loss to the structure under all policies exceeds seven thousand five hundred dollars ($7,500) unless the insurance company, association or exchange is furnished with a certificate pursuant to subsection (b) of this section and unless there is compliance with the procedures set forth in subsections (c) and (d) of this section.

See 40 P.S. § 638(a)(emphasis added).

Subsection (b)(1)(ii) of the State Statute further defines a certificate as a "certificate and bill showing the amount of delinquent taxes, assessments, penalties and user charges **against the property** as of the date specified in the request that have not been paid as of the date of the certificate . . . ," while subsection (b)(2)(ii) of the State Statute provides that upon receipt of such a certificate and bill, "the insurance company, association or exchange shall return the bill to the treasurer and transfer to the treasurer an amount from the insurance proceeds necessary to pay the taxes, assessments, penalties, charges and costs as shown on the bill."  40 P.S. § 638(b)(emphasis added).  The language of § 638(b)(2)(ii) also specifically requires payment of the delinquent taxes "from the insurance proceeds."

18

The end result of all of these provisions of § 638 is that the statutory language clearly prohibits an "insurance company, association or exchange doing business in this Commonwealth" from paying "a claim of a **named insured** for fire damage to a structure located within a municipality" in the absence of a "certificate."  The statute also does not further qualify its terms by requiring that the named insured be the "owner" of the structure destroyed by the fire.  Nor does the statute limit the imposition of the tax claim against insurance proceeds payable to the entity primarily liable for the tax debt in question.  Rather, the tax claim itself is levied "**against** [the insured] **property**" in question.  As such, in the case *sub judice*, the claim of the Taxing Authorities is also *in rem* in nature and runs with the real property.  In a practical sense by operation of the State Statute, the claim then attaches to any fire insurance proceeds payable to any named insured as opposed to being limited solely to the beneficial insured interests (if any) of the primarily liable taxpayer.

Thus, the plain language of the State Statute does not lend itself to the construction argued by the Plaintiff.  With the language being clear and unambiguous, the Court must "adhere to the plain meaning of the [applicable] language." City of Philadelphia v. F.A. Realty Investors Corp., 95 A.3d 377, 383 (Pa. Commw. Ct. 2014).

This Court's conclusion is further supported by the fact that the State Statute is to be "liberally construed to accomplish its purpose to deter the commission of arson and related crimes, to discourage the abandonment of

property[,] and to prevent urban blight and deterioration." 40 P.S. § 638(k). In this regard, the purpose of the statute is analogous to the purpose of similar statutes adopted in other states. That is, to deter the "prevalent practice of burning the buildings and pocketing the insurance proceeds, leaving the taxing district with unpaid taxes and only a value-depleted property upon which to foreclose." LMWT Realty Corp. v. Davis Agency, Inc., 649 N.E.2d 1183, 1187 (N.Y. 1995).[7]

For all of these reasons, the Court concludes that the Taxing Authorities are, under the State Statute, entitled to be paid $478,260.75 from the Insurance Proceeds.

### (c).
### Payment of $478,260.75 of the Insurance Proceeds to the Taxing Authorities Does Not Violate the Takings Clauses Set Forth in Both the U.S. Constitution and the Pennsylvania Constitution

There is a strong presumption that statutes duly and appropriately enacted by the legislature and signed into law by the executive branch are constitutionally sound. A statute is not to be declared unconstitutional unless it clearly and plainly violates the Constitution and all doubts are to be resolved in favor of finding that the legislative enactment passes constitutional muster. Pension Benefit Guar. Corp. v. R.A. Gray & Co., 467 U.S. 717, 729 (1984); Mistretta v. United States, 488 U.S. 361, 384 (1989); Heller v. Doe, 509 U.S. 312, 320-21 (1993); Mabey Bridge & Shore, Inc. v. Schoch, 666 F.3d 862, 876 (3d Cir. 2012); Commonwealth v. MacPherson, 752 A.2d 384, 388 (Pa. 2000);

---

[7]    The cause of the fire at the Beach Club is unknown. The Court is not aware of any person having been charged with the crime of arson.

Pennsylvanians Against Gambling Expansion Fund, Inc. v. Commonwealth,

877 A.2d 383, 393 (Pa. 2005); Commonwealth v. Craven, 817 A.2d 451, 454

(Pa. 2003).

The Plaintiff argues that allowing the Taxing Authorities to be paid their

unpaid taxes from the Insurance Proceeds results in a "gratuitous confiscation"

of the Plaintiff's property without just compensation in violation of the Takings

Clause(s) found in both the U.S. Constitution and the Pennsylvania

Constitution.  This Court disagrees.

The Takings Clause of the Fifth Amendment of the U.S. Constitution

provides that "private property" shall not "be taken for public use without just

compensation." U.S. CONST. amend. V.   The specific limitations found in the

Takings Clause apply to the States by virtue of their incorporation within the

Due Process Clause. Palazzolo v. Rhode Island, 533 U.S. 606, 617 (2001). The

Due Process Clause of the Fourteenth Amendment, in turn, prohibits a State

from "depriv[ing] any person of life, liberty, or property, without due process of

law." U.S. CONST. amend. XIV, §1.

The Pennsylvania Constitution also has its own version of the Takings

Clause found at Article I, § 10.  This provision of the Pennsylvania Constitution

provides that "private property [shall not] be taken or applied to public use,

without authority of law and without just compensation being first made or

secured." PA. CONST. art. I, § 10.   The Pennsylvania Supreme Court "has

continually turned to federal precedent for guidance" in determining whether

state action implicating "private property" violates the Takings Clause of the

Pennsylvania Constitution. <u>United Artists' Theatre Circuit, Inc. v. City of Philadelphia</u>, 635 A.2d 612, 616 (Pa. 1993).   As a result, the standards governing claims arising under the Takings Clause of the Fifth Amendment ordinarily control similar claims made under the Takings Clause found at Article I, Section 10 of the Pennsylvania Constitution. <u>Corman v. Nat'l Collegiate Athletic Ass'n</u>, 74 A.3d 1149, 1167 (Pa. Commw. Ct. 2013).

The existence of a constitutionally protected property interest is a preliminary requirement for any "takings" challenge.   As the United States District Court for New Jersey observed, to "succeed on a takings claim, a plaintiff must ... demonstrate that the state's action affected [the plaintiff's] legally cognizable property interest." <u>Am. Express Travel Related Servs. Co. v. Sidamon-Eristoff</u>, 755 F. Supp. 556, 577 (D.N.J. 2010) (citing <u>Prometheus Radio Project v. F.C.C.</u>, 373 F.3d 372, 428 (3d Cir. 2004)).

Moreover, there is:

> ... no set formula for determining when governmental action constitutes a taking. ...To the contrary, courts must engage in a factual inquiry to determine whether a taking has been effected.  In ascertaining whether a taking has affected a property interest, relevant considerations include the economic impact of the regulation on the claimant and ... the extent to which the regulation has interfered with distinct investment-backed expectations. ... The nature of the action is another relevant consideration.  While a physical invasion of land [is] more likely to constitute a taking, ... a public program adjusting the benefits and burdens of economic life to promote the common good ... ordinarily will not be compensable.

<u>Am. Express Travel Related Servs.</u>, 755 F. Supp. 2d at 577 (citations and quotations omitted)(citing <u>State of New Jersey v. U.S.</u>, 91 F.3d 463, 468 (3d Cir.

1996), which quoted <u>Penn Cent. Transp. Co. v. City of New York</u>, 438 U.S. 104, 123 (1978)).[8]

With these standards in mind, a fundamental question presented by the litigation before the Court is whether a "taking" exists as a result of the payment of Insurance Proceeds over to the Taxing Authorities?  The Court answers "no" to this question because no state action has affected Plaintiff's legally recognized property interests in a negative fashion under the facts of this case.

The Court reaches this conclusion because the distribution of the Insurance Proceeds first to the Taxing Authorities is something that the Plaintiff voluntarily agreed to accept in its insurance policy at its inception. Having agreed to such a distribution waterfall as to insurance proceeds, the Plaintiff can hardly claim to have had any "property" that was "taken" or "confiscated" by government action.

The Court's conclusion is particularly acute because the Plaintiff conveniently ignores the fact that the State Statute, as well as the implementing local ordinance, were well into existence long before the Plaintiff obtained its insurance policy from Erie Insurance Exchange.

---

[8]     Decisions involving "regulatory" takings may not necessarily be regarded as controlling precedent in cases involving "per se" takings. <u>See Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency</u>, 535 U.S. 302, 321-325 (2002).  Regardless, whether the Plaintiff has a vested right in property, and whether that property was effectively taken is an issue in the case *sub judice*, as well in the cases where either a "per se" taking is alleged or where a "regulatory" taking is contended.  Thus, the distinction between a "per se" taking and a "regulatory" taking is of no moment as to the case at bar because the dispositive point made in this Memorandum Opinion is that the Plaintiff did not have a vested interest in the $478,260.75 of Insurance Proceeds claimed by the Taxing Authorities.

The Plaintiff also conveniently ignores the fact that the policy in question states unambiguously that "[t]his policy conforms to the laws of the state in which your principal office is located." (See Exhibit A at p. 3, attached to the Affidavit of Francis Murrman, Esq. at Dkt. #52). This provision is consistent with applicable law which provides that pre-existing statutory provisions pertaining to the subject matter of a contract are deemed to be incorporated within the terms agreed to by the contracting parties. Clairton City School District v. Mary, 541 A.2d 849, 851 (Pa. Commw. Ct. 1988). This means that the insurance policy *sub judice* incorporates the State Statute. Coolspring Stone Supply, Inc. v. American States Life Ins. Co., 10 F.3d 144, 147-148 (3d Cir. 1993); see also First Nat'l Bank v. Flanagan, 528 A.2d 134, 137-38 (Pa. 1987).

The policy also states plainly and unequivocally that "We [i.e., Erie Insurance Exchange] will adjust all 'losses' with you [i.e., the Plaintiff]. We will pay you unless some other person … is legally entitled to receive payment." (See Exhibit A at p. 37, attached to the Affidavit of Francis Murrman, Esq. at Dkt. #52). Of course, the Taxing Authorities were always legally entitled to receive payment, and the parties have conceded that the tax obligations to the Taxing Authorities date back to 1999 or earlier—which is long before the policy was issued by Erie Insurance Exchange. (See Plaintiff's Motion for Summary Judgment at ¶27 and filed at Dkt. #36).

These circumstances all indicate that at the time the Plaintiff purchased the policy in question, its rights to insurance proceeds were always subject to

the claim of the Taxing Authorities.  That fact never changed from the outset of the Plaintiff's economic relationship under the policy until the present.  The Plaintiff's failure to establish any greater entitlement to the proceeds under its policy (and Pennsylvania law) is fatal to its assertion that payment of Insurance Proceeds to the Taxing Authorities would violate the Takings Clause(s) of the U.S. Constitution and the Pennsylvania Constitution.[9] Pennsylvania Coal Co. v. Mahon, 260 U.S. 393, 413 (1922)(the Takings Clause operates to prevent the uncompensated destruction of "previously existing rights of property and contract.").

Stated in other words, and as articulated by the Commonwealth in its brief, "Given the relevant provisions of § 638 were incorporated within the terms of the insurance contract, [the Plaintiff] never acquired a vested right to the $478,260.75 owed to the taxing authorities at the time of the fire." (Supplemental Response of the Attorney General of Pennsylvania at p. 14 and filed at Dkt. #67).  This fact is distinguishable from United States v. Rodgers, 461 U.S. 677 (1983), which is the case where the term "gratuitous confiscation" is mentioned.

United States v. Rodgers did not result in the invalidation of a statute. Rather, it involved a challenge to an IRS lien against entireties property for

---

[9]    To the extent the Plaintiff is making a similar challenge on "substantive due process grounds," the Court does not find the Plaintiff's arguments to be convincing. The Due Process Clause prohibits a governmental entity from destroying a party's rights under a *preexisting* contract. Kuehner v. Irving Trust Co., 299 U.S. 445, 451-452 (1937).  The State Statute was in existence long before the policy was issued, and the policy itself incorporates the State Statute into its terms. As such, the State Statute is part of the contract from the outset.  For the same reason, and to the extent the Plaintiff's papers could be construed to argue otherwise, any Contracts Clause challenge by the Plaintiff (under U.S. Const., Art. I, §10) fails as well. Keystone Bituminous Coal Assoc. v. DeBenedictis, 480 U.S. 470, 502-503 (1987).

taxes due solely from the husband (and not the wife).  The wife objected to a sale to satisfy the lien, claiming she had a vested interest in the property under applicable local homestead law.  The Supreme Court authorized the sale to go forward, but recognized that the wife (who was not subject to any claim of the IRS) did have a vested interest in the whole of the encumbered property by virtue of state homestead law and would be entitled to compensation for her loss.  The case at bar, however, as it relates to the Insurance Proceeds stands in stark contrast to Rodgers because the Plaintiff's interests in the $478,260.75 of the Insurance Proceeds never became vested in a constitutional Takings sense.   The Court reaches this conclusion because, as set forth above, the Plaintiff's right to Insurance Proceeds was at all times relevant hereto subject to the claim of the Taxing Authorities.[10]  Absent any vested and matured right to the $478,260.75, no gratuitous confiscation has occurred.

## V.

In rendering its decision today, the Court recognizes that the Plaintiff may be of the belief that the outcome of these proceedings is unfair--- for, after all, the Plaintiff paid the premiums for the policy that resulted in the Insurance Proceeds.

The aura of unfairness is not as bright as the Plaintiff strenuously argues.  This is because the Plaintiff is receiving in this lawsuit exactly what it

---

[10]   Cf. Kim v. Dome Entm't Ctr., Inc. v. Kim (In re  Kim), 748 F.3d 647 (5th Cir. 2014)(constitutional argument limited to where property was acquired prior to adoption of the statute) and Thaw v. Moser (In re Thaw), 769 F.3d 366 (5th Cir. 2014)(absent certain circumstances, Takings Clause claim weakened when plaintiff acquired property after the statute was enacted).

bargained for under the insurance policy.   That is, it is receiving proceeds payable after payment of outstanding taxes.

Had the Plaintiff desired a result different than what is to occur here, it certainly had options.   One such option was that it could have refused to enter into the Beach Club Management Agreement until such time the Debtor furnished to the Plaintiff evidence that all taxes were paid.   Another such option was that the Plaintiff could have obtained business interruption insurance coverage or "Income Protection" (which appears to be outside the scope of 40 P.S. §638) as opposed to mere "Property Protection" covering "Buildings."   The Plaintiff, however, did neither of these things.

The claim of unjust enrichment is further vitiated by the commitments of the Plaintiff to the Debtor in the Beach Club Management Agreement. (See Plaintiff's Motion for Summary Judgment at Ex. B (docketed as Ex. C) and filed at Dkt. #36).   Those commitments include the fact that the Plaintiff was required to pay all expenses associated with the operation of the Beach Club and to "insur[e] that the property is fully secured and maintained in a commercially reasonable fashion." (Id. at ¶1).   The commitments also included the fact that the Plaintiff was required to indemnify the Debtor against any damages to the Building resulting from Plaintiff's possession, use and occupancy. (Id. at ¶7).

Given these circumstances, the outcome of this declaratory judgment action is not unjust or inequitable as the Plaintiff may suggest.   Nor is the outcome "so unreasonable or onerous as to compel compensation." Palazzolo,

533 U.S. at 627. Moreover, equity follows the law and the outcome of this matter is mandated by the application of the law to the facts (for which there is no genuine dispute.)

## VI.

For the reasons that are set forth above, the Court shall enter an order that grants partial summary judgment in favor of the Plaintiff and grants partial summary judgment in favor of the Taxing Authorities.

Towards that end, the Court finds that no genuine issue of material fact exists and that a judgment as a matter of law is appropriate insofar as: (a) the Taxing Authorities are entitled to be paid $478,260.75 of the Insurance Proceeds; and (b) the Plaintiff is entitled to the remaining Insurance Proceeds that are held in the registry maintained by the Clerk of the United States Bankruptcy Court for the Western District of Pennsylvania.

Dated:  December 22, 2015                    ____/s/ Jeffery A. Deller
                                              Jeffery A. Deller
                                              Chief U.S. Bankruptcy Judge

cc: Case Administrator to Serve

John F. Mizner, Esq.,
          Counsel to Park Restoration, LLC

George T. Snyder, Esq. and Jeanne S. Lofgren, Esq.,
          Counsel to the Trustees of Conneaut Lake Park, Inc.

Lawrence C. Bolla, Esq.,
          Counsel to Summit Twp., Crawford County, the Tax Claim Bureau of
          Crawford County, and the Conneaut School District

Anthony T. Kovalchick, Esq.,
          Deputy Attorney General for the Commonwealth of Pennsylvania

The Office of the U.S. Trustee

FILED
12/22/15 3:10 pm
CLERK
U.S. BANKRUPTCY
COURT - PGH

28

**APPENDIX "A" is ATTACHED**

**Erie Insurance®**
CO Erie Insurance Place
rie, PA 16530

ERIE INSURANCE EXCHANGE
ULTRAFLEX POLICY

RENEWAL CERTIFICATE

| Agent | | |
|---|---|---|
| AA5322   THE GRIFFIN INS GRP INC | ITEM 2. Policy Period<br>05/21/13 TO 05/21/14 | Policy Number<br>Q41 2150674 P |

ITEM 1. Named Insured and Address
PARK RESTORATION LLC
11805 MORNINGSHORE DR
CONNEAUT LAKE PA  16316-4057

ITEM 3. Other Interest

POLICY PERIOD BEGINS AND ENDS AT 12.01 A.M. STANDARD TIME AT THE STATED
ADDRESS OF THE NAMED INSURED.
THE INSURANCE APPLIES TO THOSE PREMISES DESCRIBED AS PER THE ATTACHED
SUPPLEMENTAL DECLARATIONS. THIS IS SUBJECT TO ALL APPLICABLE TERMS OF THE
POLICY AND ATTACHED FORMS AND ENDORSEMENTS

DEDUCTIBLE (PROPERTY PROTECTION ONLY)- $ 10,000.
COVERAGES:

| | | DEPOSIT<br>PREMIUM |
|---|---|---|
| PROPERTY PROTECTION - AS PER THE ATTACHED SUPPLEMENTAL DECLARATIONS | | |
| 1. BUILDINGS | | $ |
| 2. BUSINESS PERSONAL PROPERTY AND PERSONAL PROPERTY OF OTHERS | | $   INCL |
| 3. INCOME PROTECTION | | $   INCL |
| 4. GLASS AND LETTERING | | $ |
| 5. SIGNS, LIGHTS AND CLOCKS | | $ |

LIMITS OF INSURANCE

OPTIONAL COVERAGES                                                          $

| MECHANICAL & ELECTRICAL BREAKDOWN | |
|---|---|
| THEFT DISAPPEARANCE AND DESTRUCTION | $   INCL |
| ENHANCEMENT ENDORSEMENT - CONTRACTORS ENDORSEMENT | $   INCL |
| ENHANCEMENT ENDORSEMENT - HOSPITALITY ENDORSEMENT | $   INCL |
| BUILDERS RISK COVERAGE | $   INCL |
| TOTAL DEPOSIT PREMIUM - - - - - | $   INCL<br>$   6,978. |

APPLICABLE FORMS - SEE SCHEDULE OF FORMS

See Reverse Side

**APPENDIX "A"**



SUPPLEMENTAL DECLARATIONS
LOCATION 1, BUILDING 1

LOCATION OF PREMISES                          OCCUPANCY/OPERATIONS
---------------------                         --------------------
  12324 LAKE ST, CONNEAUT LAKE,               BEACH CLUB RESTAURANT -
  CRAWFORD CO, PA  16316                       PROPERTY COVERAGE ONLY


INTEREST OF NAMED INSURED IN SUCH PREMISES - OWNER

                        PROPERTY PROTECTION
              COVERAGES                     CO-INS %    AMOUNT OF INSURANCE
1. BUILDINGS                                   80        $   611,000
2. BUSINESS PERSONAL PROPERTY AND              80        $   100,000
   PERSONAL PROPERTY OF OTHERS
3. INCOME PROTECTION                OCCURRENCE

OPTIONAL COVERAGES - PROPERTY PROTECTION
MECHANICAL & ELECTRICAL BREAKDOWN                        $      INCL

POLICYHOLDER RENEWAL SERVICE -
   BUILDING AMOUNT INCREASED BY - 3 PERCENT COMMERCIAL STRUCTURE



                           LOCATION  1


 CRIME COVERAGES                                       AMOUNT OF INSURANCE

THEFT, DISAPPEARANCE & DESTRUCTION OF MONEY & SECURITIES
   $    200 DEDUCTIBLE
   INSIDE THE PREMISES                                  $      5,000
   OUTSIDE THE PREMISES, MESSENGER #1                   $      5,000



)41 2150674                 CONTINUED ON NEXT PAGE



## SCHEDULE OF FORMS

| FORM NUMBER | EDITION DATE | DESCRIPTION |
|---|---|---|
| JLF | 03/01 | ULTRAFLEX PACKAGE POLICY |
| CL0910 | 07/02 | PENNSYLVANIA NOTICE |
| CL0246 | 09/07 | PENNSYLVANIA CHANGES - CANCELLATION AND NONRENEWAL |
| IU44 | 03/01 | PENNSYLVANIA AMENDATORY ENDORSEMENT |
| CL0985* | 01/08 | DISCLOSURE PURSUANT TO TERRORISM RISK INSURANCE ACT |
| IFB705* | 06/96 | IMPORTANT NOTICE - NO FLOOD COVERAGE |
| IF4810* | 03/08 | IMPORTANT NOTICE - POLICY SERVICE FEES |
| IF6330* | 08/09 | IMPORTANT NOTICE: DO YOU USE SUBCONTRACTORS? |
| X0001 | 01/12 | ULTRAFLEX COMMERCIAL PROPERTY COVERAGE PART |
| U51 | 03/01 | PENNSYLVANIA AMENDATORY ENDORSEMENT |
| L0952 | 01/08 | CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM |
| F4110 | 01/10 | IMPORTANT NOTICE TO POLICYHOLDERS - TERRORISM COVERAGE - PROPERTY |
| LNH | 05/06 | MECHANICAL AND ELECTRICAL BREAKDOWN COVERAGE |
| LOA | 10/09 | PRODUCTION OR PROCESS MACHINERY - DEDUCTIBLE |
| LBL | 10/09 | THEFT, DISAPPEARANCE AND DESTRUCTION |
| LKS | 01/12 | CONTRACTORS ERIEPLACEABLE ENHANCEMENTS ENDORSEMENT |
| LLW | 01/12 | HOSPITALITY ERIEPLACEABLE ENHANCEMENTS ENDORSEMENT |

41 2150674         CONTINUED ON NEXT PAGE



**Erie Insurance®**
31 Erie Insurance Place
Erie, PA 16530

ERIE INSURANCE EXCHANGE
ULTRAFLEX POLICY

RENEWAL CERTIFICATE

| Agent | ITEM 2. Policy Period | Policy Number |
|---|---|---|
| AA5322    THE GRIFFIN INS GRP INC | 05/21/13 TO 05/21/14 | Q41 2150674 P |

| ITEM 1. Named Insured and Address | ITEM 3. Other Interest |
|---|---|
| PARK RESTORATION LLC<br>11805 MORNINGHSHORE DR<br>CONNEAUT LAKE PA  16316-4057 | |

INLAND MARINE SCHEDULE
- - - - - - - - - - - - - - - - - - - - - -
BUILDERS RISK COVERAGE - COMPREHENSIVE PERILS
     $ 5000 DEDUCTIBLE  100% COINSURANCE

LOCATION 01  COMPREHENSIVE PERILS          AMOUNT $   750,000
12441 LAKE ST, CONNEAUT LAKE,
CRAWFORD CO, PA  16315
IN THE COURSE OF CONSTRUCTION INCLUDING MATERIALS AND SUPPLIES TO BE OCCUPIED AS
HOTEL

LOCATION 02  COMPREHENSIVE PERILS          AMOUNT $   150,000
CORNER OF LAKE & KEPLAR ST, LAKE,
CRAWFORD CO, PA  16315
IN THE COURSE OF CONSTRUCTION INCLUDING MATERIALS AND SUPPLIES TO BE OCCUPIED AS
ONE FAMILY DWELLING

See Reverse Side

Erie
Insurance®
An Insurance Place
PA 16530

RENEWAL CERTIFICATE

ERIE INSURANCE EXCHANGE
ULTRAFLEX POLICY

| Agent | | ITEM 2. Policy Period | Policy Number |
|-------|---|---|---|
| AA5322 | THE GRIFFIN INS GRP INC | 05/21/13 TO 05/21/14 | Q41 2150674 P |

ITEM 1. Named Insured and Address
PARK RESTORATION LLC
11805 MORNINGHSHORE DR
CONNEAUT LAKE PA  16316-4057

ITEM 3. Other Interest

SCHEDULE OF FORMS (CONTINUED)

| FORM NUMBER | EDITION DATE | DESCRIPTION |
|-------------|--------------|-------------|
| :100 | 02/02 | INLAND MARINE GENERAL CONDITIONS |
| CMAH | 08/03 | EXCLUSION - FUNGUS, WET ROT AND BACTERIA |
| CMBR | 09/09 | BUILDERS RISK COVERAGE - COMPREHENSIVE PERILS |

See Reverse Side