IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE:                                                       ) | Bankruptcy No. 14-11277-JAD |
|                                                              ) | |
| TRUSTEES OF CONNEAUT LAKE                   ) | Chapter 11 |
| PARK, INC.,                                              ) | |
|                                                              ) | |
| Debtor-in-Possession.                         ) | Adversary No. 15-1010-JAD |
| ——————————————————— X | |
|                                                              ) | Related to Dkt. Nos. 103 and 126 |
| PARK RESTORATION, LLC,                       ) | |
|                                                              ) | |
|        Plaintiff,                                      ) | |
|                                                              ) | |
|    -  vs  -                                             ) | |
|                                                              ) | |
| SUMMIT TOWNSHIP, a Municipal          ) | |
| Corporation; THE TRUSTEES               ) | |
| OF CONNEAUT LAKE PARK,                      ) | |
| a Charitable Trust; CRAWFORD           ) | |
| COUNTY, a Political Subdivision;     ) | |
| the TAX CLAIM BUREAU OF                     ) | |
| CRAWFORD COUNTY; and the                   ) | |
| CONNEAUT SCHOOL DISTRICT,                 ) | |
|                                                              ) | |
|        Defendants.                                   ) | |
| ——————————————————— X | |

## MEMORANDUM OPINION

### Background

This is a declaratory judgment action involving a dispute regarding the
relative rights of the Trustees of Conneaut Lake Park, Inc. (the "Debtor"), Park
Restoration, LLC (the "Plaintiff" or "Park Restoration") and certain tax creditors
of the Debtor (specifically Summit Township, Crawford County, the Tax Claim
Bureau of Crawford County and Conneaut School District (collectively, the
"Taxing Authorities")) with respect to fire insurance proceeds (together with any

{00018038}

interest that has accrued on such sums, the "Insurance Proceeds") in the original amount of $611,000.

On December 22, 2015, this Court determined that summary judgment was appropriate and that (a) the Debtor is not an insured under the applicable insurance policy, and is not entitled to be paid any of the Insurance Proceeds, (b) the Taxing Authorities should be paid $478,260.75 of the Insurance Proceeds, and (c) any principal sums remaining of the Insurance Proceeds after payment to the Taxing Authorities should be paid to the named insured—Park Restoration.

The background and reasoning for the Court's decision is set forth in the Court's Memorandum Opinion and Order of December 22, 2015. Because the Court writes this Memorandum Opinion primarily for the parties—who are familiar with the facts and procedural posture of this case—the Court hereby incorporates the findings and conclusions it made in its December 22, 2015 Memorandum Opinion and Order as if fully stated herein.

After entry of summary judgment, the Taxing Authorities filed a motion seeking payment of $478,260.75 of the Insurance Proceeds (which were previously interpleaded into the Court's registry). Unhappy that it was not awarded all of the Insurance Proceeds, Park Restoration filed an appeal to the United States District Court for the Western District of Pennsylvania (the "District Court"). Park Restoration also filed a *Motion for Stay Pending Appeal.*

Park Restoration's *Motion for Stay Pending Appeal* was met with opposition by the Taxing Authorities and by the Debtor. As to the latter, the

Debtor filed a cross appeal. Also, by its response in opposition to the *Motion for Stay Pending Appeal* the Debtor made two requests. One, it asked that the Court deny Park Restoration's request for a stay and have the Clerk of the Bankruptcy Court be ordered to release $478,260.75 of the Insurance Proceeds to the Taxing Authorities. Second, because the Debtor challenged the Court's conclusion that the Debtor had no entitlement to any of the Insurance Proceeds, the Debtor requested that the Court stay its judgment as it relates to the payment of any remaining proceeds to Park Restoration.

On February 9, 2016, the Court conducted a hearing on Park Restoration's *Motion for Stay Pending Appeal.* Thereafter, the parties were ordered to supplement the record in the form of filing affidavits and additional briefs. Thereafter the parties putatively filed such documents, and this matter is now ripe for decision.

## Standard for Analyzing a Request for a Stay Pending Appeal

The Court must consider four factors when ruling on a motion for stay pending an appeal. Those factors are: (1) whether the movant is likely to succeed on the merits of the appeal; (2) whether the movant will suffer irreparable injury if a stay is not granted; (3) whether a stay would substantially harm other parties to the litigation; and (4) whether a stay is in the public interest. See In re Revel AC, Inc., 802 F.32d 558, 568 (3d Cir. 2015)(quoting Hilton v. Braunskill, 481 U.S. 770, 776, 107 S.Ct. 2113, 95 L.Ed.2d 724 ((1987)).

The Court notes that, to determine whether a stay pending appeal is warranted, the Court is to balance each of the factors at issue and "consider the relative strength of the four factors." Id. (citing Brady v. Nat'l Football League, 640 F.3d 785, 789 (8th Cir. 2011)(quoting Fargo Women's Health Org. v. Schafer, 18 F.3d 526, 538 (8th Cir. 1994)).

Of course, when considering the relative strength of the four factors, the United States Supreme Court has held that the "most critical" factors are the first two: (a) whether the movant has demonstrated a strong showing of the likelihood of success, and (b) whether the movant will suffer irreparable harm. See Nken v. Holder, 556 U.S. 418, 434, 129 S.Ct. 1749, 173 L.Ed.2d 550 (2009). As to the irreparable harm factor, it refers to the "harm that cannot be prevented or fully rectified" by a successful appeal. In re Revel AC, 802 F.3d at 568 (quoting Roland Mach. Co. v. Dresser Indus., 749 F.2d 380, 386 (7th Cir. 1984)(Posner, J.)).

Once a movant satisfies the first two factors, the traditional stay inquiry then calls for balancing of the remaining two factors—i.e., the "harm to the opposing party and weighing the public interest." Id. (quoting Nken, 556 U.S. at 435, 129 S.Ct. 1749)).

The Third Circuit Court of Appeals recently summarized how the balancing test is to be applied:

> We weigh the likely harm to the movant (absent a stay)(factor two) against the likely irreparable harm to the stay opponent(s) if the stay is granted (factor three). This is called the balancing of harms or balancing of equities. We also take into account where the public interest lies (factor four)—in effect,

how a stay decision has "consequences beyond the immediate parties." <u>Roland Mach.</u>, 749 F.2d at 388.

<u>In re Revel AC, Inc.</u>, 802 F.3d at 569.

The Third Circuit also summed up the stay pending appeal analysis as follows:

> [A]ll four stay factors are interconnected, and thus the analysis should proceed as follows. Did the applicant make a sufficient showing that (a) it can win on the merits (significantly better than negligible but not greater than 50%) *and* (b) will suffer irreparable harm absent a stay? If it has, we balance the relative harms considering all four factors using a sliding scale approach. However, if the movant does not make the requisite showings on either of these first two factors, the inquiry into the balance of harms and the public interest is unnecessary, and the stay should be denied without further analysis. . . . But depending on how strong a case the stay movant has on the merits, a stay is permissible even if the balance of harms and public interest weigh against holding a ruling in abeyance pending appeal.

<u>Id.</u> at 571 (quoting <u>In re Forty-Eight Insulations</u>, 115 F.3d 1294, 1300-01 (7th Cir. 1997))(quotations and brackets omitted).

With all of these factors and standards in mind, the Court considers the merits of the *Motion for Stay Pending Appeal*.

### Park Restoration's Likelihood of Success

In the context of stays pending an appeal, caselaw is all over the map in terms of the standard the Court is to use to determine what constitutes a likelihood of success on appeal.

For example, some courts focus on the strength of the case the movant will present on appeal. <u>See In re Countrywide Home Loans, Inc.</u>, 387 B.R. 467,

471 (Bankr. W.D. Pa. 2008)(citing <u>In re Polaroid Corp.</u>, 2004 WL 253477 *1 (D. Del. 2004)).   As my colleague Judge Thomas Agresti noted: "Taking this approach does put a court in the somewhat awkward, though not impossible, position of trying to objectively assess the likelihood that its ruling will be upheld on appeal." <u>Id.</u>

To avoid the difficulties imposed by this form of self-assessment, other courts have focused "on whether the movant seeks to raise issues on appeal that are substantial, serious, and doubtful so as to make them fair ground for litigation." <u>Id.</u> (citing <u>In re Lickman</u>, 301 B.R. 739, 743 (Bankr. M.D. Fla. 2003)).

In addition, a few other courts have adopted a "sliding scale" measure under which a court will examine the strength of the case on appeal, relative to the hardships to be suffered if a stay is not granted. <u>Id.</u> at 472 (citing <u>In re Cujas</u>, 376 B.R. 480, 486 (Bankr. E.D. Pa. 2007)).

Most recently, the Third Circuit Court of Appeals weighed in on this issue in <u>In re Revel AC, Inc.</u>, <u>supra.</u>, when it held:

> Just how strong of a merits case must a stay applicant show? The formulations used to describe the *degree* of likelihood of success that must be shown vary widely. To give but a sampling of the range that exists, some require a showing that the underlying appeal is more likely to succeed than fail.   Others call for a substantial possibility, although less than a likelihood, of success.   For our Court, a sufficient degree of success for a strong showing exists if there is a reasonable chance, or probability, of winning.   Thus, while it is not enough that the chance of success on the merits be better than negligible, the likelihood of winning on appeal need not be more likely than not …

In re Revel AC, Inc., 802 F.3d at 568-69 (citations, quotations and footnotes omitted).

Given the standard set forth in Revel AC, the question before the Court is whether Park Restoration has a reasonable chance, or probability of winning on appeal? Of course, there is no exact science for any court in making such a determination. Perhaps it turns on the complexity of the case and the novelty of the issues presented by the litigants. No matter what, the chance of success on appeal must be materially more than negligible, but need not be certain.

For purposes of deciding the *Motion for Stay Pending Appeal,* this Court assumes for sake of argument that Park Restoration has met its burden as to the first factor--- the likelihood of success. The Court does so because the case on appeal is a case of first impression.

Specifically, during the course of deciding this matter, neither the Court nor any of the parties could locate any prior case where the statute at issue, 40 P.S. § 638, was found to apply (or found to not apply) in instances where the named insured is not the actual fee owner of the property which was insured against fire damage. In addition, neither the Court nor the parties could locate any case precisely on point which addresses the primary question on appeal. That is, whether the application of the state statute at issue constitutes an unlawful "gratuitous confiscation" in contravention of the Takings Clauses found in both the Pennsylvania Constitution and the United States Constitution.

To be clear, although this Court is concluding that Park Restoration has established the first factor in support of its *Motion for Stay Pending Appeal*, nothing in this holding should be construed as holding that Park Restoration's likelihood of success on appeal is "more likely than not." In fact, the opposite is true.

The undisputed record is that at the time the Plaintiff purchased the policy in question, its rights to insurance proceeds were always subject to 40 P.S. § 638 and the claim of the Taxing Authorities. That fact never changed from the outset of the Plaintiff's economic relationship under the policy until the present.

The Plaintiff's failure to establish any greater entitlement to the proceeds under its policy (and Pennsylvania law) is fatal to its assertion that payment of Insurance Proceeds to the Taxing Authorities would violate the Takings Clause(s) of the U.S. Constitution and the Pennsylvania Constitution. This conclusion is appropriate because the distribution of the Insurance Proceeds first to the Taxing Authorities is something that Park Restoration voluntarily agreed to accept by operation of its insurance policy in the first instance. Having agreed to such a distribution waterfall as a matter of law, Park Restoration can hardly claim to have had any vested property interest that was "taken" or "confiscated" by government action. Kim v. Dome Ent. Ctr., Inc. (In re Kim), 748 F.3d 647, 657 (5th Cir. 2014)(only property interests predating the enactment of the statutory provision in question enjoy constitutional protection under the Takings Clause); Thaw v. Moser (In re Thaw), 769 F.3d 366, 369-372

(5th Cir. 2014)(Takings claim weakened when plaintiff acquired property after the statute was enacted).

## Park Restoration's Claim of Irreparable Injury

In Revel AC, supra., the Third Circuit Court of Appeals also provided guidance as to the quantum of irreparable injury a stay proponent must demonstrate in support of its motion.  According to the Third Circuit:

> On the second factor, the applicant must demonstrate that irreparable injury is *likely* not merely possible in the absence of a stay.  While a reference to likelihood of success on the merits has been interpreted by courts to cover the generic range of outcomes, for irreparable harm we understand the Supreme Court's use of likely to mean more apt to occur than not.

In re Revel AC, Inc., 802 F.3d at 569 (citations, quotations and brackets omitted).

Through the lens of this standard, the Court concludes that Park Restoration has not established the existence of irreparable injury to support a stay pending appeal.

Specifically, in its *Motion for Stay Pending Appeal*, Park Restoration avers that if this Court's decision is reversed "it would be impossible for [Park Restoration] to have immediate access to the insurance proceeds." See *Motion for Stay Pending Appeal* at ¶17.  The record, however, belies such an assertion.

In the unlikely event Park Restoration is successful in its appeal, the Taxing Authorities would be required to return any Insurance Proceeds that were paid to them.  Notwithstanding Park Restoration's contention otherwise, the record reflects that the Taxing Authorities do maintain a fund balance

sufficient within their respective approved budgets to remit any sums which they may be required to repay if Park Restoration is successful on appeal. See *Affidavit of Conneaut School District* at Dkt. No. 137; *Affidavit of Crawford County* at Dkt. No. 138; and *Affidavit of Summit Township* at Dkt. No. 141.

The Court does recognize that Park Restoration complains that any such repayment would allegedly be subject to some sort of vote by the local governing bodies. This complaint, however, rings hollow because such municipalities have not objected to litigating these items in this Court. As such, the Taxing Authorities cannot hide behind any shield of sovereign immunity. See Clark v. Barnard, 108 U.S. 436, 447 (1883) and Lapides v. Board of Regents, 535 U.S. 613, 617-623 (2002). Parenthetically, the Court would note that this consideration assumes sovereign immunity could conceivably shield the Taxing Authorities from disgorgement in the first instance—which itself is a dubious proposition under the circumstances. See N. Ins. Co. of New York v. Chatham Cnty., 547 U.S. 189, 193-194 (2006)("Municipalities, unlike States, do not enjoy a constitutionally protected immunity from suit." "This is true even when ... such entities exercise a slice of state power.")(quoting Jinks v. Richland Cnty., 538 U.S. 456, 466 (2003) and Lake Country Estates, Inc. v. Tahoe Reg'l Planning Agency, 440 U.S. 391, 401 (1979)). It therefore appears that the Taxing Authorities' obligation to disgorge funds is subject to any further orders entered by this Court or the District Court. To the extent any local law is contrary to orders of this Court or the

District Court, the local law would be of no moment by operation of the Supremacy Clause of the United States Constitution.

Under these circumstances, the Court concludes that the movant has not established the second factor necessary for a stay pending appeal. This conclusion warrants the entry of an order denying the *Motion for Stay Pending Appeal* without the need for the Court to entertain any further analysis. In re Revel AC, Inc., 802 F.3d at 568 ("if the movant does not make the requisite showings on either of these first two factors, the inquiry into the balance of harms and the public interest is unnecessary, and the stay should be denied without further analysis").

Therefore, for the reasons set forth above, an order shall be entered that denies the *Motion for Stay Pending Appeal* filed by Park Restoration.

## The Debtor's Request for a Partial Stay

As set forth in the Background section of this Memorandum Opinion, the Debtor has lodged a cross appeal with respect to the Court's December 22, 2015 Memorandum Opinion and Order. The gist of the Debtor's cross appeal is that the Debtor contends that the Court erred when it concluded that Park Restoration has an interest in all of the Insurance Proceeds remaining after payment to the Taxing Authorities. Because the Debtor claims that the Court erred, the Debtor requests in its response papers that the Court stay its order as to all distributions to Park Restoration.

The Debtor's request for a stay does raise two concerns. One, the request may be procedurally improper. Pursuant to Fed.R.Bankr.P.

8007(a)(1)(A), any request for stay pending appeal must be done by way of motion. The Debtor here has not filed a motion. Rather, it has merely filed a response to Park Restoration's own motion. Nonetheless, the parties have argued the Debtor's request for a stay and the Court will not elevate form over substance.

Second, even if the Debtor's request constitutes a motion, a question exists as to whether the request is premature. The Court makes this inquiry because Local Rule 5095-2 sets forth the circumstances in which funds may be withdrawn from the Court's registry. This local rule states, in pertinent part, that in "order to withdraw deposited funds, a motion for disbursement of invested registry funds and a proposed order shall be filed." See W.PA.LBR 5095-2. To date, Park Restoration has not filed such a motion and an argument exists to the effect that there may not be a need for a stay until the time a motion to distribute is filed. Notwithstanding this argument, absent a stay there is nothing which would presently preclude Park Restoration from filing this type of motion and pursuing the immediate distribution of the remaining Insurance Proceeds. It therefore appears appropriate for the Court to address the Debtor's request for a stay pending the cross appeal.

Like Park Restoration's request for stay pending appeal, the Debtor's request is subject to the same standards elucidated above—that is, a showing that: (1) the Debtor has a likelihood of success in its cross appeal, (2) the Debtor will suffer irreparable injury if the Court's prior order is not stayed pending the cross appeal, (3) whether the issuance of a stay would

substantially harm the other parties to the litigation, and (4) the public interest.

As to likelihood of success, the Debtor's main charge of error on appeal deals with the nature of Park Restoration's interest in the Beach Club and the value of it.

As to the latter—the nature of Park Restoration's interest—the Debtor devotes much space in its papers addressing whether Park Restoration's interest was a license or a leasehold. Of course, in the Court's Memorandum Opinion, the Court observed that Park Restoration's interest was **either a leasehold or a license**. See Memorandum Opinion at p. 14 ("The Plaintiff had a possessory interest for a term of twenty (20) years under the Beach Club Management Agreement which is akin to either a leasehold interest in the property or a license with respect to the same.").

The Court did not have to pick and choose the precise nature of Park Restoration's interest because the issue before the Court was **not** whether Park Restoration owned a leasehold interest in the Beach Club. Rather, the issue was whether it had an "insurable interest."

Therefore, the resolution of the issue of whether Park Restoration held an insurable interest was not premised upon the precise nature of Park Restoration's property interest. Rather, it was premised upon a determination of whether Park Restoration held such a relationship with the property "that its destruction by the peril insured against involves pecuniary loss to [it]." See A.K. Nahas Shopping Ctr., Inc. v. Reitmeyer, 161 B.R. 927, 931 (Bankr. W.D. Pa.

1993)(citing <u>Commonwealth v. Rodebaugh</u>, 519 A.2d 555, 563 (Pa. Commw. Ct.

1986)); <u>see also</u> <u>Kellner v. Aetna Casualty and Surety Co.</u>, 605 F.Supp. 331,

333 (M.D. Pa. 1984).

The Court then held in its Memorandum Opinion and Order of December

22, 2015 that no genuine dispute of material fact existed and that the record

supported the conclusion that Park Restoration had an insurable interest in

the Beach Club because it derived much pecuniary benefit from its undisputed

right to long term possession and use of the Beach Club.   Thus, as to this

issue, the Court finds that the Debtor's likelihood of success on appeal is

negligible.

It is true that the parties waffled in their papers as to whether Park

Restoration held a leasehold interest in the Beach Club, even though the

Debtor has recently denied the existence of such waffling.   For example, on

page 4 of its response papers the Debtor avers that it "denied that Park

Restoration was a lessee in its state court pleadings and never waffled on its

position...." Such a statement is contrary to the record.   On January 21, 2014,

the Debtor filed an *Answer and New Matter to Plaintiff's Amended Complaint

and Demand for Jury Trial,* and attached to it a "Lease Agreement" for the Hotel

Conneaut.[1]   In this same pleading, the Debtor asserted that: "It is believed and

---

[1] Given the confusion over this matter, a copy of the *Answer and New Matter to Plaintiff's Amended Complaint and Demand for Jury Trial* is attached to this Memorandum Opinion as Appendix 1.   For the sake of completeness, both Park Restoration and the Taxing Authorities have acknowledged in their pleadings from time to time that Park Restoration had a leasehold interest in the premises. See *Complaint for Declaratory Judgment* at ¶8 and *Amended Complaint for Declaratory Judgment* at ¶10 (where Park Restoration acknowledged its interest as a lessee); see *Crawford County Tax Claim Bureau Answer and New Matter* at ¶10 (suggesting that the Plaintiff leased the Beach Club from the Debtor).

therefore averred that [Park Restoration] executed a substantially similar document for the property commonly referred to as the Beach Club." See *Answer and New Matter to Plaintiff's Amended Complaint and Demand for Jury Trial* at ¶37; see also id. at ¶9.

Given these assertions, the Debtor did acknowledge in pleadings that Park Restoration was conveyed a leasehold interest in the Beach Club (but that the Debtor simply could not locate the written instrument memorializing it). Naturally, this admission in a pleading raises estoppel issues that have never been fully addressed by the parties. Cf. Deutsche Bank Nat'l Trust Co. v. Evans, 421 B.R. 193 (W.D. Pa. 2009)(Cercone, J.)(where spouse admits having the benefit and knowledge of a mortgage transaction, he or she cannot hide behind the statute of frauds to avoid the burdens of the transaction).

The Court also observes that the Debtor's efforts to minimize Park Restoration's possessory interest in the Beach Club is disingenuous. The Court reaches this conclusion because Paragraph 1 of the Management Agreement unequivocally affords Park Restoration with "operational control of the Beach Club for a period of twenty years." See *Amended Complaint Seeking Declaratory Judgment, Ex. "B"*. Paragraph 1 further states that "operational control shall include, but is not limited to, physical control and security . . ." This paragraph of the Management Agreement also gives Park Restoration the ability to exclude the Debtor from the premises as the document itself permits the Debtor to utilize "nonexclusive areas" only when "not in conflict with any event planned by" Park Restoration.

In addition, where the Management Agreement affords the Debtor access to the premises, it does not permit the Debtor to have unfettered access (or unilateral access on a whim).   Rather, pursuant to Paragraph 1 of the Management Agreement, the Debtor was only permitted "reasonable access." Of course, this provision of the Management Agreement operates to limit the Debtor's access from a temporal perspective, durational perspective, and location perspective (because surely it would be unreasonable access if the Debtor was to come into the premises whenever it wanted and preclude Park Restoration from effectively operating the Beach Club).   The Court can only surmise that counsel for the Debtor recognized these facts when it affirmatively stated to the Court at the August 25, 2015 hearing on this matter: "I think the reading of both the management agreement and the insurance policy themselves evidence what the intent of the parties were.   Under the management agreement Park Restoration had exclusive possession and control of the Debtor's property ..." See *Transcript of August 25, 2015 Hearing* filed at Dkt. No. 121 at p. 15, lines 21-25.[2]

Given these provisions in the Management Agreement, it is beyond dispute that Park Restoration's interests were significant.   Even if its rights

---

[2] The Management Agreement *sub judice* is markedly different than the management agreement described in the case cited by the Debtor, Cleveland Fin. Assocs. v. Cleveland Banquets, LLC, 2009 Ohio Misc. LEXIS 554 (Ohio Mun. Ct. Nov. 4, 2009). In Cleveland Fin. Assocs v. Cleveland Banquets, the party alleging the existence of the lease had no right to exclude the plaintiff from designated areas.   Conversely, the Management Agreement between the Debtor and Park Restoration does afford Park Restoration substantial rights.   Thus, a fair reading of the document is that it is possible to construe it as a lease.   As the Pennsylvania Supreme Court observed in Schweitzer v. Evans, "It is true that no particular form of words is necessary to constitute a lease and that any writing is sufficient which establishes the intention of one party voluntarily to dispossess himself of the premises, for a consideration, and of the other to assume the possession for a prescribed period ..." Schweitzer v. Evans, 63 A.2d 39, 40 (Pa. 1949).   But, again, the Court need not decide this issue.

under the Management Agreement were that of a mere license, scholars in this field of the law acknowledge that "a license is not a nothing interest" because it "reduces the completeness" of the owner's property interest. See Milton R. Friedman, Friedman on Leases at §37.1, p. 1662 (Practising Law Institute, 3d ed. 1990). For example, under Pennsylvania law, a licensee can in some instances enjoin a landowner from interfering with the license. Id. at n.12 (citing Leininger v. Goodman, 277 Pa. 75, 120 A. 772 (1923)).

To reiterate, the ultimate resolution of the lease/license issue was not material to the Court's decision as the Court merely concluded that Park Restoration had an "insurable interest" by virtue of its possession of the Beach Club (regardless of whether it's interest is characterized as a lease or license).

In support of its cross appeal, the Court recognizes that Debtor does complain that Park Restoration is being paid Insurance Proceeds in excess of the value of its financial interest.  The Court questions whether the Debtor has legal standing to even present such a challenge (inasmuch as the Debtor is neither an insured under the policy, nor is it a loss payee; additionally, the Debtor never paid any premiums whatsoever with respect to the policy).

It would seem to the Court that the party to challenge Park Restoration's insured interest would be Erie Insurance.  However, Erie Insurance has been dismissed from the lawsuit upon consent of all parties in interest.  Moreover, it appears that no one ever disputed the amount of "loss" incurred in this case because nothing in the record reflects that any party invoked the appraisal

remedy found in Article X, § 2 of the insurance policy at issue. See Dkt. No. 52-1 at p. 37.

The Court also has questions as to which party has the burden of proof as to value.  For example, in the summary judgment proceedings, the Debtor took the "all or nothing" position.  It argued before the Court that since Park Restoration was not the fee owner of the Beach Club, Park Restoration could have no insurable interest.[3]  The Debtor, however, neither raised nor asserted an intermediate position[4] of asking that an appraised value of the insurable interest be determined.  This failure of the Debtor is important because the Debtor is also claiming an interest in the insurance proceeds and is now the party challenging the value of the insured's financial interest.  This posture of the case seems to support a conclusion that the Debtor bore the burden of

---

[3] During the summary judgment proceedings, counsel for the Debtor's "all or nothing" argument consisted of the following:

> I'd actually -- I'd say that the legally entitled to payment [provision in the insurance policy] covers both the taxing authorities under 43 PS 638, and that it also covers the Debtor, too, as the owner of the interest insured, and of the covered property. The second sentence is important to that. It says the insurer will not pay the insured any more than their financial interest in the covered property. And the covered property, as we just went through and discussed what the different coverages are available, in this case it's the building, and that covered property, the only person with a -- entity with a financial interest in it is the Debtor as the owner. Park Restoration does not have a financial interest in the building as the covered property, as that term is used and defined in the policy. It only has an interest in the personal property, at max an interest in the personal property and in business interruption or income protection.

See Transcript of August 25, 2015 Hearing filed at Dkt. No. 121 at p. 12, lines 3-19.  No other arguments in this regard were made at any time relevant hereto.

[4] The Court uses the phrase "intermediate position" because the Debtor now appears to contend that the value of Park Restoration's interest is somewhere between zero and the face amount of the Insurance Proceeds.

{00018038}                                        18

proof,[5] and its failure to produce any evidence in this regard supports the entry

of summary judgment in favor of Park Restoration. See Berckeley Inv. Group,

Ltd. v. Colkitt, 455 F.3d 195, 201 (3d Cir. 2006)("In this respect, summary

judgment is essentially 'put up or shut up' time for the non-moving party . . .").

In addition, the Debtor's failure to preserve its intermediate value theory

supports the notion that the Debtor has effectively waived its right to assert it

in an "after the fact" basis on appeal. Buncher Co. v. Official Comm. of

Unsecured Creditors of Genfarm Ltd. P'ship IV, 229 F.3d 245, 253 (3d Cir.

2000)(affirming district court's conclusion that issue was effectively waived on

appeal by parties failure to raise issue before the trial court).

As such, a neutral and detached view of the record leads the Court to

conclude that the Debtor's odds of prevailing on appeal are not more likely

than not.

Nonetheless, the Court admittedly concedes that the preceding issues are

appropriate fodder for appeal.  Given this Court's role as the trial court, it is

not for this Court to ultimately decide the merits of these issues.  Rather, all

that the Court is called upon to do is to determine whether the Debtor's

chances on appeal are materially greater than negligible.  Given the fact that

the record is not as robust as the Court would like, the Court concludes that

---

[5] In declaratory judgment actions, the placement of a party in the caption is not determinative as to which party bears the ultimate burden of proof.  The United States Court of Appeals for the Third Circuit suggests that courts examine the following factors in determining which party bears the burden of proof in declaratory judgment actions: (1) whether the plaintiff objected to assuming the burden of proof, (2) which party asserted the affirmative of the issue, (3) which party would lose in the absence of any evidence on the issue, and (4) what sort of relief is sought. See Am. & Foreign Ins. Co. v. Phoenix Petroleum Co., No. 97-3349, 1998 U.S. Dist. LEXIS 20411, at *9 (E.D. Pa. Dec. 23, 1998)(citing Fireman's Fund Ins. Co. v. Videfreeze Corp., 540 F.2d 1171 (3d Cir. 1976), cert. denied, 429 U.S. 1053, 97 S.Ct. 767 (1977)).

perhaps the chances of the Debtor on appeal in this difficult case are greater than negligible—albeit "less than 50/50." As such, this Court concludes that the first factor of the four part test supports the entry of a stay as to distribution to Park Restoration.

The second factor that the Court considers is whether the Debtor will suffer irreparable injury if no stay is imposed. The Court concludes here that this factor supports the partial stay requested by the Debtor. The Court reaches this conclusion because nothing in the record suggests that Park Restoration could repay the funds if they are distributed to Park Restoration before the cross appeal is exhausted. Indeed, the record reflects that Park Restoration has been effectively out of business since the Beach Club was destroyed by fire. Park Restoration has also admitted its insolvent status when it asked the District Court for permission to opt out of court mandated ADR. In support of its request to opt out of ADR, Park Restoration cited its inability to pay the fees and costs associated with complying with the District Court's ADR process. Given these circumstances, it would appear that Park Restoration's ability to repay funds is in substantial doubt and that the Debtor would suffer irreparable injury (in the form of a loss of the funds) if no stay were to be put into place pending the outcome of the cross appeal.

Given the fact that the first two factors—likelihood of success and irreparable injury—support the Debtor's request for a partial stay, the Court considers the third and fourth factors as outlined by the Third Circuit's opinion in <u>Revel AC</u>. These remaining two factors require that the Court consider the

harm to Park Restoration if a stay is imposed, and the impact that such a stay will have upon the public interest.

As to the harm to Park Restoration if a stay is imposed, the record reflects that Park Restoration has already been effectively put out of business. Nothing in the record suggests that Park Restoration's fate would be made any more worse off if a stay is imposed.  In fact, Park Restoration has been without the funds for years, and to date it has not sought the affirmative release of the funds from the Court's registry (which itself appears to be a tacit admission that the delay in payment does not cause Park Restoration any more injury, let alone irreparable injury).  Given these circumstances, the third factor weighs in favor of a stay.

As to the fourth factor—the public interest—this factor is neutral. Certainly putting a hold on the partial distribution protects and preserves the Debtor's disputed interest (which in-turn does not put a premature end to possible distributions to creditors or investment into the Debtor's bankruptcy reorganization).  Denying the stay is not contrary to the public interest either, as no one has demonstrated that the public at large will benefit from a stay (or suffer a material detriment as a result of a stay).

In sum, three of the four factors germane to the calculus as to whether to impose a stay supports the imposition of a stay as to Park Restoration, and the remaining factor the Court is to consider is neutral.  Under these circumstances, the Court shall enter an order that grants the Debtor's request

for a stay pending appeal as to the partial distribution of Insurance Proceeds to Park Restoration.

## **Conclusion**

For the reasons set forth above, the Court concludes that Park Restoration has not met its burden of proof as to its *Motion for Stay Pending Appeal.* As a result, an Order shall be entered that denies Park Restoration's *Motion for Stay Pending Appeal.*

Conversely, the Court concludes that the Debtor has met its burden of proof as to the Debtor's request for the entry of a stay as to any partial distribution to Park Restoration pending the outcome of the Debtor's cross appeal. An Order shall therefore be entered which imposes such a stay pending further order of the Court.

The Clerk shall also be directed to transmit this Memorandum Opinion and Order to the District Court as a part of the record on appeal.


Dated:  April 12, 2016                 ___/s/ Jeffery A. Deller_____
                                       Jeffery A. Deller
                                       Chief U.S. Bankruptcy Judge

cc: Case Administrator to Serve:        FILED
                                        4/12/16 2:40 pm
John F. Mizner, Esq.,                   CLERK
     Counsel to Park Restoration, LLC   U.S. BANKRUPTCY
                                        COURT - PGH
George T. Snyder, Esq. and Jeanne S. Lofgren, Esq.,
     Counsel to the Trustees of Conneaut Lake Park, Inc.

Lawrence C. Bolla, Esq.,
     Counsel to Summit Twp., Crawford County, the Tax Claim Bureau of
     Crawford County, and the Conneaut School District

{00018038}                    22

The Office of the U.S. Trustee

Anthony Kovalchik, Esq.,
        Counsel to the Commonwealth of Pennsylvania

**APPENDIX "1" is ATTACHED**

Original Filed And This Copy
Certified As a True Copy On:

JAN 2 1 2014

PROTHONOTARY
CRAW COUNTY MDV, PA

## IN THE COURT OF COMMON PLEAS OF CRAWFORD COUNTY, PENNSYLVANIA

### CIVIL DIVISION

PARK RESTORATION LLC,                    :
        *Plaintiff*                      :
                                       :
vs.                                       :          No. 2013-646
                                       :
ERIE INSURANCE EXCHANGE, THE             :
SUMMIT TOWNSHIP, THE                      :
TRUSTEES OF CONNEAUT LAKE                  :
PARK, CRAWFORD COUNTY, THE                 :
TAX CLAIM BUREAU OF                        :
CRAWFORD COUNTY AND THE                    :
CONNEAUT SCHOOL DISTRICT,                  :
        *Defendants*                     :

**Type of Document:**
Answer and New Matter to
Plaintiff's Amended Complaint
and Demand for Jury Trial

**Filed on Behalf of:**
Defendant, Trustees of Conneaut
Lake Park, Inc.

**Counsel of Record:**
Brian J. Pulito, Esquire
(PA ID 203952)

STEPTOE & JOHNSON PLLC
201 Chestnut Street, Suite 200
Meadville, PA 16335
Tel: (814) 333-4900

**JURY TRIAL DEMANDED**

Original Filed And This Copy
Certified As a True Copy On:

JAN 21 2014

PROTHONOTARY
CRAW COUNTY MDV, PA

# IN THE COURT OF COMMON PLEAS OF CRAWFORD COUNTY, PENNSYLVANIA

## CIVIL DIVISION

| | | |
|---|---|---|
| **PARK RESTORATION LLC,** | : | |
| *Plaintiff* | : | |
| vs. | : | No. 2013-646 |
| | : | |
| **ERIE INSURANCE EXCHANGE,** | : | |
| **SUMMIT TOWNSHIP, THE** | : | |
| **TRUSTEES OF CONNEAUT LAKE** | : | |
| **PARK, CRAWFORD COUNTY, THE** | : | |
| **TAX CLAIM BUREAU OF** | : | |
| **CRAWFORD COUNTY** AND **THE** | : | |
| **CONNEAUT SCHOOL DISTRICT,** | : | |
| *Defendants* | : | |


**Type of Document:**
Answer and New Matter to
Plaintiff's Amended Complaint
and Demand for Jury Trial

**Filed on Behalf of:**
Defendant, Trustees of Conneaut
Lake Park, Inc.

**Counsel of Record:**
Brian J. Pulito, Esquire
(PA ID 203952)

STEPTOE & JOHNSON PLLC
201 Chestnut Street, Suite 200
Meadville, PA 16335
Tel: (814) 333-4900


**JURY TRIAL DEMANDED**

STEPTOE & JOHNSON PLLC
201 Chestnut Street, Suite 200
Meadville, PA 16335
(814) 333-4900

## IN THE COURT OF COMMON PLEAS OF CRAWFORD COUNTY, PENNSYLVANIA

### CIVIL DIVISION

PARK RESTORATION LLC,                      :
        *Plaintiff*                          :
vs.                                        :          No. 2013-646
                                        :
ERIE INSURANCE EXCHANGE,                    :
SUMMIT TOWNSHIP, THE                        :
TRUSTEES OF CONNEAUT LAKE                   :
PARK, CRAWFORD COUNTY,                      :
THE TAX CLAIM BUREAU OF                     :
CRAWFORD COUNTY AND THE                     :
CONNEAUT SCHOOL DISTRICT,                   :
        *Defendants*                         :

### NOTICE TO PLEAD

To:  Plaintiff, Park Restoration LLC:


You are hereby notified to file a written response to the enclosed New Matter within twenty (20) days from service hereof or a judgment may be entered against you.


STEPTOE & JOHNSON PLLC

By: _____
Brian J. Pulito, Esquire
201 Chestnut Street, Suite 200
Meadville, PA 16335
Tel: (814) 333-4900
*Attorneys for Defendant, Trustees*
*of Conneaut Lake Park, Inc.*

STEPTOE & JOHNSON PLLC
201 Chestnut Street, Suite 200
Meadville, PA 16335
(814) 333-4900

# IN THE COURT OF COMMON PLEAS OF CRAWFORD COUNTY, PENNSYLVANIA

## CIVIL DIVISION

| | | |
|---|---|---|
| PARK RESTORATION LLC, | : | |
| *Plaintiff* | : | |
| vs. | : | No. 2013-646 |
| | : | |
| ERIE INSURANCE EXCHANGE, | : | |
| SUMMIT TOWNSHIP, THE | : | |
| TRUSTEES OF CONNEAUT LAKE | : | |
| PARK, CRAWFORD COUNTY, | : | |
| THE TAX CLAIM BUREAU OF | : | |
| CRAWFORD COUNTY AND THE | : | |
| CONNEAUT SCHOOL DISTRICT, | : | |
| *Defendants* | : | |

## ANSWER AND NEW MATTER TO PLAINTIFF'S AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

AND NOW, comes the Defendant, Trustees of Conneaut Lake Park, Inc., by and through its counsel of record in this matter, Steptoe & Johnson PLLC, and in response to Plaintiff's Amended Complaint Seeking Declaratory Judgment files its Answer and New Matter and Demand for Jury Trial, as follows:

1.    Admitted.

2.    Admitted.

3.    Admitted.

4.    Admitted in part and denied in part.  It is admitted that the Trustees of Conneaut Lake Park, Inc., is a nonprofit company and has the principle address provided in this Paragraph.  It is denied that the same is a charitable trust.

5.    Admitted.

6.    Admitted.

7.    Admitted.

8.    Denied.  It is denied that the document attached as Exhibit A is a true and correct copy of the lease agreement between Park Restoration ("PR") and the Trustees of Conneaut Lake Park, Inc. ("TCLP").  To the contrary and as more fully set forth in Defendant's new matter herein, a correct and true copy of the Lease for the Hotel is attached hereto as Exhibit A.

9.    Denied.  As with the lease identified in Paragraph 8, the document attached to the Complaint is not a true and correct copy of the management agreement for the Beach Club.  As more fully set fort in the TCLP's New Matter below, the TCLP is searching diligently for a copy of the same.  It is believed and therefore averred that its terms are identical to those attached as Exhibit A to TCLP's New Matter.

10.    Paragraph 10 states a conclusion of law to which no response is required.

11.    Paragraph 11 states a conclusion of law to which no response is required.

12.    TCLP lacks sufficient information and belief as to the truth of the matter asserted in Paragraph 12.

13.    Admitted in part and denied it part.  Paragraph 13 refers to a written document.  To the extent that Paragraph 13 properly construes that part of the written document it restates, the same is admitted.  Conversely, to the extent that Paragraph 13 misconstrues that part of the written document it restates, the same is denied.

14.    Admitted.

15.    TCLP lacks sufficient information and belief as to the truth of the matter asserted in Paragraph 15.

16.    Admitted.

17.    TCLP lacks sufficient information and belief as to the truth of the matter asserted in Paragraph 17.

18.    TCLP lacks sufficient information and belief as to the truth of the matter asserted in Paragraph 18.

19.    Paragraph 19 states a conclusion of law to which no response is required.

20.    Paragraph 20 states a conclusion of law to which no response is required.

21.    Paragraph 21 states a conclusion of law to which no response is required.

22.    Admitted in part and denied it part.  Paragraph 22 refers to a statute.  To the extent that Paragraph 22 properly construes that part of the statute that it restates, the same is admitted.  Conversely, to the extent that Paragraph 22 misconstrues that part of the statute that it restates, the same is denied.

23.    Paragraph 23 does not aver any facts.  Therefore, no response to the same is required.

24.    Paragraph 24 states a conclusion of law to which no response is required.

25.    Paragraph 25 states a conclusion of law to which no response is required.

26.    Paragraph 26 does not aver any facts.  Therefore, no response to the same is required.

27.    The above Paragraphs are incorporated herein as if set forth in their entirety.

28.    Paragraph 28 does not aver any facts.  Therefore, no response to the same is required.

29.    Denied.  It is believed and therefore averred that the Agreement referenced in this Paragraph is not a true and correct copy of the agreement between PR and TCLP to mange the Beach Club.

30.    TCLP adopts Paragraph 29 herein.

31.    TCLP adopts Paragraph 29 herein.

32.    Admitted in part and denied it part.  Paragraph 32 refers to a written document.  To the extent that Paragraph 32 properly construes that part of the written document it restates, the same is admitted.  Conversely, to the extent that Paragraph 32 misconstrues that part of the written document it restates, the same is denied.

33.    Paragraph 33 states a conclusion of law to which no response is required.

34.    Paragraph 34 does not aver any facts.  Therefore, no response to the same is required.

WHEREFORE, Defendant, Trustees of Conneaut Lake Park, Inc., prays that this Honorable court dismiss the Plaintiff's Amended Complaint with prejudice and award it costs of suit.

## NEW MATTER

35.    TCLP adopts the above paragraphs as if set forth at length herein.

36.    PR signed the document attached hereto as Exhibit A.

37.    It is believed and therefore averred that PR executed a substantially similar document for the property commonly referred to as the Beach Club.

38.    TCLP is searching diligently for a copy of the agreement to the Beach Club.

39.    TCLP claims the affirmative defense of consent.

40.    TCLP claims the affirmative defense of estoppel.

41.    TCLP claims the affirmative defense of laches.

42.    TCLP claims the affirmative defense of license.

43.    TCLP claims the affirmative defense of release.

44.    TCLP claims the affirmative defense of res judicata.

45.    TCLP claims the affirmative defense of statute of limitations.

46.    TCLP claims the affirmative defense of waiver.

47.    TCLP claims the affirmative defense of collateral estoppel.

WHEREFORE, Defendant, Trustees of Conneaut Lake Park, Inc., prays that this
Honorable court dismiss the Plaintiff's Amended Complaint with prejudice and award it
costs of suit.

## DEMAND FOR JURY TRIAL

Defendant, Trustees of Conneaut Lake Park, Inc. hereby demands a trial by jury in the
above-captioned matter.

Respectfully submitted,

STEPTOE & JOHNSON PLLC

By: _____

Brian J. Pulito, Esquire
201 Chestnut Street, Suite 200
Meadville, PA  16335
Tel: (814) 333-4900
*Attorneys for Defendant, Trustees
of Conneaut Lake Park, Inc.*

Jun 17 13 02:59p       Angela Hensley                                 8143988257                          p.1

61478  3A  2009mS

## LEASE AGREEMENT

**THIS LEASE AGREEMENT**, made this /8ᵗʰ day March, 2009, by and between the following designated parties:

**TRUSTEES OF CONNEAUT LAKE PARK, INC.,** a Pennsylvania non-profit corporation with principal offices at 12382 Center Street, Crawford County, Pennsylvania, hereinafter referred to as LANDLORD

- A N D -

**PARK RESTORATION, LLC,** a Pennsylvania limited liability company, with offices at 11805 Morningshore Drive, Conneaut Lake, Crawford County, Pennsylvania, hereinafter referred to as TENANT

### WITNESSETH:

**THE SAID LANDLORD, IN CONSIDERATION OF** the rents and covenants hereinafter mentioned, does demise and lease unto the said Tenant, all those premises described as the Hotel Conneaut, Conneaut Lake Park, Crawford County, Pennsylvania 16316.

**TO HAVE AND TO HOLD** unto said Tenant, subject to the conditions of this Agreement for the term commencing on the date and for a period of three hundred sixty (360) months.

**IN CONSIDERATION** for the use and occupancy of the said premises, the said Tenant agrees to pay to the said Landlord the sum One Thousand Five Hundred ($1,500.00) Dollars per month, The first payment is due and payable in advance on or before the commencement of the lease term and each monthly payment is due on or before the last day of the month preceding. The payment will increase at a rate of five percent annually plus the CPI – Urban areas for the Jan. to Jan. time frame for the first five (5) years of this agreement. Beginning with the sixth year, the payment amount will increase at the CPI rate set forth herein.



EXHIBIT

A

tabbies

PLCB LICENSING
2009 APR 15  PM 1:19

61478

Additionally the Tenant warrants that the Tenant shall convey to the Trustees of Conneaut Lake Park, its successors or assigns, 10% of gross proceeds from the business conducted in these facilities for Gross proceeds exceeding $150,000.00 per year for each year this lease is in effect.

*AS FURTHER CONSIDERATION* for the use and occupancy of said premises, the said Tenant hereby agrees to faithfully keep and be bound by the following covenants and agreements:

1.  Tenant shall be responsible for payment of all utility charges incident to the property during the term of this Lease, including but not limited to electric, gas, and telephone, to make timely payment thereof, and if requested, to provide to Landlord, at the expiration of the Lease, evidence of payment in full for all utilities.

2.  Tenant agrees to maintain fire and casualty insurance coverage on the leased premises. Tenant shall maintain adequate insurance coverage with respect to the personal and business property located on and within the leased premises. Tenant will indemnify, defend and hold Landlord harmless against all claims and demands and judgments for loss, damage or injury to property or person resulting or occurring as a result of the use or occupancy of the premises by Tenant. Tenant agrees to carry and pay for public liability insurance in limits of not less than $1,000,000.00 for injury to one person; $2,000,000.00 aggregate; The landlord shall be named as an additional insured and to deposit copies of Certificates of said Policy with the Landlord. Landlord shall not be liable for any damage, loss or destruction to Tenant=s fixtures, business equipment and other contents that may at any time exist from the use or condition of said premises or building during the term of this Lease.

3.  Tenant has examined and knows the condition of the said premises and has received same in 'as is' condition. Tenant agrees to keep said premises in good repair, replacing all broken glass and keeping the premises in a clean, safe and healthy condition according to Township Ordinances and the direction of the proper public officers during the term of this lease at Tenant=s own expense; Tenant shall be solely

PLCB LICENSING    2009 APR 15 PM 1:19

61478

responsible for all repairs and improvements of any kind. Tenant shall deliver and surrender to the Landlord possession of the premises hereby leased upon the expiration of this lease, or its termination in any way, in as good or better condition and repair as the same shall be at the commencement of said term, ordinary wear excepted. Tenant to pay all damages to premises, fixtures, plumbing, loss of keys, and the like, and damage caused by neglect of said Tenant.

4.   Current Real Estate taxes shall be the responsibility of Tenant.

5.   If at any time during the term of this Lease, Tenant shall leave the premises without an occupant or said premises shall be locked, or entry shall be refused to Landlord, or its agent, either for inspection or other lawful purpose, or in the event of the removal of the goods, Tenant authorizes the Landlord, or any authorized agent or officer, to enter any premises or building where said goods may be found or located, either by duplicate keys or by forcible entrance and make levy thereon and the Tenant hereby releases said Landlord, its agents and officers, from any damage or liability by reason of such entry, and hereby agrees to pay for such damage, the same to be added to and become a part of the costs for the collection of such rent as may be due and payable. While open for business, the tenant is to keep sidewalk and parking lot clear of snow and ice. While closed, the Tenant must keep the Parking Lot and Driveways clear of snow and ice to allow for Emergency Vehicle Access. The Tenant is responsible for all damages for neglect and the neglect to comply with the provisions set forth in this agreement and shall be recovered as rent in arrears.

6.   Tenant will not make any alterations of or upon any part of the Leased premises except by and with the written consent of the Landlord, which consent shall not be unreasonably withheld. All alterations and additions to said premises shall remain for the benefit of Landlord unless otherwise provided in said written consent, and Tenant further agrees in the event of making such alterations as herein provided to indemnify and save harmless the Landlord from any expenses, liens, claims

*61478*

damages to person or property on the Leased premises, arising out of or resulting from the undertaking or making of said alterations or additions.

7.  Nothing shall be done upon said premises contrary to the condition of the policies of insurance on the buildings thereon, whereby the hazard may be increased or the insurance invalidated; neither the whole nor any portion of the said premises shall be sublet; nor shall this Lease, or any interest therein, be assigned, nor shall the Tenant remove or attempt to remove from said premises during the term of this Lease, or any renewal thereof, without the written consent of the Landlord, which shall not be unreasonably withheld; and no unlawful business shall at any time be carried on upon said premises.

8.  It is agreed that either party may cancel the terms of this agreement, at any time, with thirty (30) days written notification. It is further agreed that the terms and conditions of this Agreement and Lease shall in no way be changed or altered except by a writing signed by all of the parties hereto.

9.  This Agreement constitutes the entire agreement of the parties hereto and may only be modified by a subsequent writing signed by each of the parties hereto.

10. This Agreement shall be construed under the laws of the Commonwealth of Pennsylvania and shall bind the parties hereto and their respective heirs, executors, administrators and assigns.

PLCB LICENSING
2009 APR 15 PM 1:19

61478

*IN WITNESS WHEREOF*, and with intent to be legally bound, the parties hereby set their hands and seals the day and year first above written.

*LANDLORD:*
*TRUSTEES OF CONNEAUT LAKE PARK, INC.*

*TENANT:*

*PARK RESTORATION, LLC*

By: _____
Gregory E. Sutterlin, Manger & Member

*Attest:*
_____
Secretary

PLCB LICENSING
2009 APR 15 PM 1:19

# VERIFICATION

Brian J. Pulito, counsel for the Defendant, Trustees of Conneaut Lake Park, Inc. in the above matter, deposes and says that he is of counsel for said Defendant in the above matter; that he is authorized to make this Verification on behalf of said Defendant; that the facts set forth in the foregoing document are true and correct, not of his own knowledge, but from information supplied to him by said Defendant; that the purpose of this Verification is to expedite litigation; and that a Verification by Defendant will be furnished if requested.  This statement is made subject to the penalties of 18 Pa.C.S.A. §4904 relating to unsworn falsification to authorities and is given pursuant to the provisions for verification of pleadings as defined and provided for in Rule 1024 of the Pennsylvania Rules of Civil Procedure.

STEPTOE & JOHNSON PLLC

By: _____

Brian J. Pulito, Esquire

Date: _1/21/14_____

STEPTOE & JOHNSON PLLC
201 Chestnut Street, Suite 200
Meadville, PA 16335
(814) 333-4900

## IN THE COURT OF COMMON PLEAS OF CRAWFORD COUNTY, PENNSYLVANIA

### CIVIL DIVISION

| | | |
|---|---|---|
| **PARK RESTORATION LLC,** | : | |
| *Plaintiff* | : | |
| **vs.** | : | **No. 2013-646** |
| | : | |
| **ERIE INSURANCE EXCHANGE, THE** | : | |
| **SUMMIT TOWNSHIP, THE** | : | |
| **TRUSTEES OF CONNEAUT LAKE** | : | |
| **PARK, CRAWFORD COUNTY,** | : | |
| **THE TAX CLAIM BUREAU OF** | : | |
| **CRAWFORD COUNTY AND THE** | : | |
| **CONNEAUT SCHOOL DISTRICT,** | : | |
| *Defendants* | : | |

### CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 21st day of January, 2014, a true and correct copy of the foregoing *Answer and New Matter to Plaintiff's Amended Complaint and Demand for Jury Trial* was served upon the following via U.S. First Class Mail, Postage Pre-Paid:

Francis R. Murrman, Esq.
3 North Maple Avenue
Greensburg, PA 15601

Theodore H. Watts, Esq.
Watts and Pepicelli P.C.
916 Diamond Park
Meadville, PA 16335

Richard W. DiBella, Esq.
Kelley A. Morrone, Esq.
DiBella, Geer, McAllister & Best, P.C.
20 Stanwix Street, 11th Floor
Pittsburgh, PA 15222

Keith A. Button, Esq.
Shafer Law Office
360 Chestnut Street
Meadville, PA 16335

George Joseph, Esq.
John B. Fessler, Esq.
Quinn, Buseck, Leemhus, Toohey & Kroto, Inc.
2222 West Grandview Blvd.
Erie, PA 16506

William L. Walker, Esq.
Thomas, Spadafore & Walker, LLP
Meridian Building
935 Market Street
Meadville, PA 16335

STEPTOE & JOHNSON PLLC

By: _____
Brian J. Pulito, Esquire
201 Chestnut Street, Suite 200
Meadville, PA 16335
(814) 333-4900
*Attorneys for Defendant, Trustees
of Conneaut Lake Park, Inc.*